UNITED STATES of America, Plaintiff,

v.

Joseph V. PIGNATIELLO, Juan Carlos Schidlowski, and Arlan I. Preblud, Defendants.

Crim. No. 85–CR–106.

United States District Court, D. Colorado.

Jan. 23, 1986.

Robert Hackman, William Pharo, Asst. U.S. Attys., Office of the U.S. Atty., Denver, Colo., for plaintiff.

Lee D. Foreman, Haddon, Morgan & Foreman, P.C., Denver, Colo., for defendant Pignatiello.

Kevin Michael Shea, Holme, Roberts & Owen, Colorado Springs, Colo., for defendant Schidlowski.

Edward W. Nottingham, Sherman & Howard, Denver, Colo., for defendant Preblud.

## MEMORANDUM OPINION
## AND ORDER

MATSCH, District Judge.

The indictment, filed May 21, 1985, charges these defendants with several federal law violations arising out of the operations of OTC Net, Inc., a Colorado corporation which engaged in the business of acting as broker and dealer in securities. The first count charges all of the defendants and two unindicted co-conspirators with an

extensive conspiracy operating from 1980 to the time of indictment, in violation of 18 U.S.C. § 371. A number of defense motions were heard and considered by this court, resulting in an order on motions entered August 20, 1985, requiring extensive disclosure by the government concerning the conduct of the investigation leading to this indictment.

The same defendants were previously before this court on substantially the same charges alleged in an indictment filed on October 19, 1983 (No. 83–CR–334), and dismissed by this court's Memorandum Opinion and Order of Dismissal of March 28, 1984. *United States v. Pignatiello*, 582 F.Supp. 251 (D.Colo.1984). The basis for the dismissal was a violation of F.R.Crim.P. 6(d), resulting from the presence of an SEC attorney in the grand jury room when the first witness in the investigation was questioned on August 24, 1982. Other defense motions were before the court at the time of that order of dismissal, but the order made them moot. The second indictment has regenerated those motions and has raised some new issues.

The defendants have moved to suppress much of the evidence upon which the government relies in this prosecution because of an adjudicated violation of Colorado law governing grand jury proceedings in the state court. The basic facts underlying this contention are not in dispute. The first federal grand jury investigation relating to this matter began in August, 1982. The District Attorney for the Second Judicial District of the State of Colorado had previously been presenting evidence to a grand jury in the District Court, City and County of Denver, Colorado.

C.R.S. § 16–5–204(4)(f) requires the reporting by an authorized reporter of all grand jury proceedings and testimony, and prohibits the release of transcripts without prior court approval. Rule 6.2 of the Colorado Rules of Criminal Procedure directs that all grand jury investigations and functions shall be secret. Colorado Criminal Rule 6.9 governs the procedure for obtaining court approval for releases of grand jury material.

The Denver District Attorney authorized the release of transcripts of the testimony of state grand jury witnesses and documents obtained through state grand jury subpoenas to the federal prosecutors working on the federal investigation, as well as two agents from the Internal Revenue Service, beginning as early as September, 1982. Those releases were without prior court approval. The state court indictment was not returned until May 24, 1983. In the state criminal proceeding, the state judge ordered suppression of any and all materials released in violation of state grand jury secrecy requirements, and any evidence derived therefrom. That order was entered March 23, 1984 as a result of a hearing held on March 9, 1984, with a stipulation of facts entered into by the district attorney and counsel for the defendants. A second state court order was entered June 22, 1984, nunc pro tunc May 30, 1984. That June order was based on detailed findings concerning the releases made without prior court approval. Those findings referred specifically to releases made to Assistant United States Attorney William Pharo in October, 1983. Because this matter had been raised by defense motions in the earlier federal prosecution, government counsel submitted evidence to a different federal grand jury, and attempted to avoid direct use of the transcripts of testimony and documents which had been made subject to the state court suppression orders.

The government seeks to minimize the violation of state grand jury secrecy requirements. First, it is contended that the material released to Mr. Pharo in October, 1983 was pursuant to a court order which the state court ruled invalid because of procedural irregularity. Second, the government contends that most of the material was already known to the federal attorneys and investigators, and that which was not then known would inevitably have been discovered. Finally, it is asserted that the transcripts and documents were not submitted to the second federal grand jury.

The defendants sought to counter these assertions at an evidentiary hearing held in this court on November 26, 1985. From that hearing, this court concludes that if there is a legal basis for suppression of the use of the material obtained in violation of state law in this federal prosecution, the government would have an extraordinarily difficult burden of showing attenuation, inevitable discovery, or any other avoidance of the impact of the rule prohibiting derivative use of tainted evidence. Accordingly, the legal question is presented squarely— does the United States Constitution or any federal law require suppression of evidence obtained in this violation of state law?

█ The defendants urge that this court give full faith and credit to the state court orders and apply them to this prosecution pursuant to 28 U.S.C. § 1738. That is too simplistic. The state court suppression orders are based on the same prophylactic rule which both state and federal courts have used to exclude evidence obtained from unreasonable searches and seizures. There has been no final adjudication of a controversy which comes within the scope of the full faith and credit clause. Thus, this court has accepted the findings made by the state court in support of that suppression order, but the remedy is a matter of federal law. No federal constitutional or federal statutory rights were violated by the disclosure of the state grand jury materials. In *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1959), the Supreme Court held that a state court ruling suppressing evidence does not bar the use of such evidence in a federal proceeding, and used the following language:

> In determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. The test is one of federal law, neither enlarged by what one state court may have counte-

nanced, nor diminished by what another may have colorably suppressed.

*Id.* at 223–24, 80 S.Ct. at 1447.

The purpose of the Colorado court's exclusionary order was the protection of the integrity of the state grand jury proceedings. The defendants contend that this purpose would be frustrated by admitting the evidence in this court. There is no merit to that argument. The information was lawfully obtained by state law enforcement officials using appropriate procedures in connection with the state grand jury. If appropriate state court orders had been first obtained, nothing would have precluded the use of that evidence in the federal investigation and prosecution. The error was with the staff of the state district attorney, and did not involve misconduct by the federal lawyers and investigators. The state prosecutor has already been sanctioned by the suppression order which resulted in ultimate dismissal of his case. There is no basis for any belief that future unauthorized releases by Colorado state officials would be deterred by the exclusion of this evidence in the federal prosecution.

The Supreme Court has consistently recognized that the exclusionary sanction must be applied selectively to avoid impeding unacceptably the truth-finding functions of judge and jury by the suppression of probative but tainted evidence. *United States v. Payner*, 447 U.S. 727, 734, 100 S.Ct. 2439, 2445, 65 L.Ed.2d 468 (1980). In this court's view, the defendants' motion to suppress the first indictment in this case would have been denied, and it follows that the motion must be denied as to the second indictment.

█ The defendants have moved to dismiss this indictment for prosecutorial misconduct. The unauthorized use of the state grand jury materials is one of the grounds for this motion. An additional ground is the allegation that the prosecutors elicited testimony before the grand jury in violation of the marital privilege because Mr. Pignatiello's former wife, Richalie Cranmer, testified before the state grand jury and, also, the first federal

grand jury which returned the indictment in case 83–CR–334. Ms. Cranmer was not called before the grand jury which returned the subject indictment. Under Rule 501 of the Federal Rules of Evidence, the privilege of any witness is governed by federal law, and under *Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), the witness-spouse, alone, holds the privilege to refuse to testify. Without now ruling on the admissibility of any testimony of the former spouse at trial in this case, particularly with respect to confidential communications, there is no basis for a finding that any fundamental rights of any of the defendants in this indictment were violated by the calling of this witness before the prior grand juries.

■ The defendants also contend that AUSA Pharo violated an order entered by Chief Judge Finesilver requiring that Mr. Pharo discontinue appearing before the grand jury in this investigation because of Mr. Pharo's action in misrepresenting his identity in a telephone communication during the course of this investigation. This court conducted an evidentiary hearing on this matter, and it is clear that Mr. Pharo appeared before the same grand jury in connection with matters concerning customers and brokers of OTC Net, Inc. which related to, but did not involve directly, the allegations made against these defendants. Mr. Pharo's conduct could well be considered to be in violation of Chief Judge Finesilver's order, but this court makes no finding in that regard because the appropriate remedy for such a violation would be a contempt proceeding before Judge Finesilver rather than a dismissal of the indictment.

The Tenth Circuit Court of Appeals has made it very clear in *United States v. Pino*, 708 F.2d 523 (10th Cir.1983), that the drastic remedy of court dismissal of an indictment for prosecutorial misconduct must be limited to a showing of some significant infringement on the grand jury's ability to exercise independent judgment. Nothing before this court indicates that the independent judgment of the grand jury returning the subject indictment was influenced or affected by any inappropriate conduct of the federal prosecutors now before this court. The *Pino* case was very recently strongly reaffirmed in *United States v. Anderson*, 778 F.2d 602, 604–605 (10th Cir. 1985).

■ The defendants Pignatiello and Schidlowski have moved to dismiss Count VI and Count VII, respectively, for prosecutorial vindictiveness. The assertion is that these charges were added because of the aggressive challenge to the prosecutors' conduct in the second grand jury investigation. There is no evidence of vindictiveness. The new grand jury indictment has changes in the counts, including the addition of new counts. The possible fine which could be levied against each defendant has been increased, but the exposure to possible prison sentences remain the same. Because evidence was presented to a new grand jury, and because the second indictment is not grossly disproportionate to the dismissed indictment, there has been no threshold showing of vindictiveness.

■ The defendants have moved to dismiss the indictment on the contention that the government is using a civil action, *SEC v. OTC Net, Inc.*, No. 82–Z–877, as an improper means to discover evidence for this criminal prosecution. That civil action is pending before Judge Weinshienk of this court, and the discovery cutoff date has been set for July 3, 1986. The defendants' concern about the possible use of civil discovery for criminal purposes has been expressed only in general terms. The grand jury provides significantly greater discovery opportunities than is available under the rules of civil procedure, and if there is any inappropriate use of civil discovery for purposes of this prosecution, the appropriate action is to move for a stay of discovery or for protective orders from the judge presiding over the civil action.

■ Finally, the defendants have moved for severance under F.R.Crim.P. 14. The

general rule in this circuit is that individuals charged with a conspiracy should be tried together, especially where the proof is based on the same evidence and acts. *United States v. Hines,* 696 F.2d 722, 732 (10th Cir.1982). The defendants contend that the defendant Arlan Preblud served as legal counsel for Schidlowski and Pignatiello, and that a joint trial would result in a conflict between Preblud's right to give exculpatory evidence and the other defendants' attorney-client privilege.

█ The attorney-client privilege does not extend to disclosures made in furtherance of a crime. The question of whether the communications are privileged can be determined at trial. The question of admissibility is not affected by the number of trials.

█ The defendants also contend that only one defendant may choose to testify, and that his lawyer may be forced to comment on the other defendants' silence. As the government notes, this is not a reason for severance where the defenses are not antagonistic. *United States v. Herring,* 582 F.2d 535, 542 (10th Cir.1978). In addition, the fact that a defendant cannot secure the testimony of his co-defendants at trial is insufficient to require severance. The defendants must first show that when called at a separate trial, the co-defendant would give exculpatory testimony.

The defendants have failed to show sufficient prejudice or other grounds for severance.

Upon the foregoing, it is

ORDERED that the defendants' motions to suppress; to dismiss and to sever, as discussed above, are denied, and it is

FURTHER ORDERED that all counsel and the defendants will be present for a pre-trial conference in Courtroom A, Second Floor, Post Office Building, 18th and Stout Streets (use 19th Street Entrance), Denver, Colorado on *Friday, February 14, 1986 at 1:30 p.m.*