UNITED STATES of America

v.

Edwin EDWARDS, et al.

No. CRIM. 98–165–B–M2.

United States District Court,
M.D. Louisiana.

Dec. 28, 1999.

Michael S. Fawer, Covington, LA, Daniel I. Small, Butters, Brazilian & Small, LLP, Boston, MA, for Edwin Edwards, defendant.

Edwin Edwards, Baton Rouge, LA, pro se.

Karl J. Koch, Unglesby & Koch, Baton Rouge, LA, Lewis O. Unglesby, Lewis O. Unglesby, Attorney at Law, Baton Rouge, LA, James M. Cole, Bryan Cave LLP, Washington, DC, for Stephen Edwards, defendant.

Stephen Edwards, pro se, Baton Rouge, LA.

Rebecca L. Hudsmith, Federal Public Defenders Office for Middle and Western Districts of LA, Lafayette, LA, for Cecil Brown, defendant.

Servando C. Garcia, III, Ryan J. Roemershauser, Garcia & Bishop, Metairie, LA, William H. Jeffress, Jr., James R. Heavner, Jr., Miller, Cassidy, Larroca & Lewin, LLP, Washington, DC, for Andrew Martin, defendant.

Patrick Fanning, New Orleans, LA, for Bobby Johnson, defendant.

Mary Olive Pierson, Cooper & Pierson, Baton Rouge, LA, Camille F. Gravel, Jr., Alexandria, LA, Hillar C. Moore, III, Baton Rouge, LA, for Gregory Tarver, defendant.

Kenneth Craig Smith, Jr., Smith & John, Shreveport, LA, for Ecotry Fuller, defendant.

James B. Letten, Peter G. Strasser, Thomas L. Watson, Dept. of Justice, U.S. Attorneys Office, New Orleans, LA, Michael William Magner, Stephen A. Higginson, U.S. Attorney's Office, Eastern District of Louisiana, New Orleans, LA, Eddie J. Jordan, JR, U.S. Attorney's Office, New Orleans, LA, for U.S.

### RULING

POLOZOLA, Chief Judge.

Defendants have filed a motion to dismiss[1] based on alleged violations of *Kastigar v. United States*.[2] The United States has filed an opposition to the motion.[3] For reasons which follow, the Court denies defendants' motion to dismiss.[4]

In their motion, defendants argue that they "received complete derivative use immunity for their testimony pursuant to Louisiana Code of Criminal Procedure Article 433(A)(2)."[5] Defendants further assert that the "immunity granted by Article 433(A)(2) is binding on the federal government."[6] The United States denies that any immunity was granted to any defendant or that there was any *Kastigar* violation.

The question presented in *Kastigar v. United States* was "whether the United States Government may compel testimony from an unwilling witness, who invokes the Fifth Amendment privilege against compulsory self-incrimination, by conferring on the witness immunity from use of the compelled testimony in subsequent criminal proceedings, as well as immunity from use of evidence derived from the testimony."[7] The defendants in *Kastigar* had been ordered by the district court to answer questions before the grand jury under a grant of immunity conferred pursuant to 18 U.S.C. §§ 6002, 6003. When defendants persisted in their refusal to answer any questions before the grand jury, they were held in contempt and were committed to the custody of the Attorney General until they either answered the grand jury's questions or the term of the grand jury expired. The Supreme Court held that testimony before a grand jury could be compelled under such circumstances.

■ The Louisiana Supreme Court recently addressed the issue of immunity

1. Rec. Doc. No. 736.

2. 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

3. Rec. Doc. No. 745.

4. The Court also adopts by reference its opinion on defendants' Motion for Order Requiring Pre–Trial Production of Materials Subpoenaed from the East Baton Rouge Parish District Attorney Pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure, a copy of which is attached in the appendix to this opinion. See *United States v. Edwards, et al.*, 79 F.Supp.2d 645 (M.D.La.1999).

5. Rec. Doc. No. 737, p. 7.

6. Rec. Doc. No. 737, p. 9. The Court notes that although all defendants joined in the motion, defendants have only presented evidence showing that Andrew Martin testified before the East Baton Rouge Parish grand jury. As discussed infra relative to Judge Tyson's order issued March 24, 1994, it appears that Stephen Edwards was called testify, but it is not clear whether he offered any testimony. While the Court is aware from other motions filed in this case that Edwin Edwards, Stephen Edwards, and Gregory Tarver appeared before the state grand jury, the Court is not aware of the nature of their testimony. Even if the Court were to assume for purposes of this motion that each defendant testified before the state grand jury, the defendants' motion must still be denied on the merits.

7. 406 U.S. at 442, 92 S.Ct. at 1655.

under state law in *State v. Edmondson.*[8] The Louisiana Supreme Court stated that "there are essentially two sources of immunity: (1) formal, or statutory immunity; and (2) informal, or 'pocket immunity.'"[9] "Statutory immunity is what may be granted by statute when a witness is summoned to testify at a trial or before a grand jury and refuses to do so by invoking his Fifth Amendment privilege against self-incrimination."[10] The Louisiana Supreme Court cited LSA–C.Cr.P. Article 439.1 as a basis for statutory immunity.[11] "The State, through the explicit authorization of an immunity statute, may then grant the type of immunity afforded by the statute, and may compel the recalcitrant witness' testimony, under penalty of contempt, and over the witness' invocation of his or her right to remain silent."[12]

Article 439.1 of the Louisiana Code of Criminal Procedure provides that statutory immunity be given **upon request of the attorney general in conjunction with the prosecuting district attorney.**[13] The defendants presented *no* evidence to show that anyone in the present proceeding was compelled to testify before the state grand jury over the invocation of the defendant's privilege against self-incrimination. Doug Moreau, the District Attorney for the Parish of East Baton Rouge,

stated in his affidavit that to his knowledge, no witness was compelled to testify before the state grand jury pursuant to Article 439.1.[14] Mr. Moreau further stated that to his knowledge, "no use/derivative use immunity was conferred pursuant to [LSA–C.Cr.P. Article 439.1]."[15] Article 439.1 requires that the attorney general, in conjunction with the prosecuting district attorney, make a request for immunity. Finally, Mr. Moreau stated that "[a]s a matter of practice, witnesses before the grand jury are not told that they are prohibited from asserting a valid Fifth Amendment privilege, and I am unaware of any witness being told that."

In support of their *Kastigar* motion and their assertion of immunity, the defendants filed the affidavit of the defendant Andrew Martin.[16] Mr. Martin stated that Mr. Moreau advised him that he was not a target of the investigation and, therefore, could not have an attorney present during the grand jury proceeding.[17] Mr. Martin also stated that he "was told that [he] had to answer the questions" asked.[18] There is no evidence that Mr. Martin invoked his Fifth Amendment privilege against self-incrimination or that Mr. Moreau requested statutory immunity for Mr. Martin. For the Court to consider the issues in

---

**8.** 714 So.2d 1233 (La.1998).

**9.** *Edmondson,* 714 So.2d at 1237.

**10.** *Edmondson,* 714 So.2d at 1237.

**11.** See *Edmondson,* 714 So.2d at 1237, footnote 5.

**12.** *Edmondson,* 714 So.2d at 1237.

**13.** See *State v. Johnson,* 558 So.2d 325, 328 (La.App. 3rd Cir.1990); *State v. Tanner,* 425 So.2d 760, 763 (La.1983)(Testimony under an order obtained pursuant to Article 439.1 gives a witness immunity from use of that testimony in future prosecutions). In *Tanner,* the court noted, "[i]t is significant that defendant Tanner was not offered and did not receive that statutory immunity... Since Tanner did not testify under compulsion of an order, he cannot claim use immunity." 425 So.2d at 763.

**14.** Rec. Doc. No. 506, Exh. A.

**15.** Rec. Doc. No. 506, Exh. A.

**16.** Although defendants sweepingly imply that "the defendants" testified before the state grand jury under a grant of immunity, *no* evidence whatsoever of immunity is offered as to the remaining defendants—Edwin Edwards, Stephen Edwards, Cecil Brown, Gregory Tarver, Bobby Johnson, and Ecotry Fuller. The Court is aware from other motions filed in the record that Edwin Edwards, Stephen Edwards, and Gregory Tarver did appear before the state grand jury. The nature and extent of their testimony has not been disclosed to this Court.

**17.** Rec. Doc. No. 443, Exhibit 2.

**18.** Rec. Doc. No. 443, Exhibit 2.

*Kastigar,* a witness must be compelled to testify against his will and must be granted use/derivative use immunity before testifying under such compulsion. There is simply no evidence to support the assertion that Mr. Martin or any other defendant in the present case was granted statutory immunity pursuant to LSA–C.Cr.P. Article 439.1 when testifying before the state grand jury. Defendants' argument is without merit.

Defendants also claim statutory immunity pursuant to LSA–C.Cr.P. Article 433(A)(2). They state that the "enactment of Article 433(A)(2) reflected a decision by the Louisiana Legislature to afford use immunity to a witness who was denied the right to counsel due to non-target status, and who later became a target." [19] As stated in *State v. Edmondson,* there are two types of immunity—formal/statutory immunity and informal/pocket immunity. In *State v. Cinel,* the Fourth Circuit stated that "the only Louisiana statute specifically granting any type of immunity (use immunity) is Code of Criminal Procedure Article 439.1, **which requires the agreement of the district attorney or the attorney general.**" [20]

■ Defendants failed to cite one case in support of their argument that a witness may be granted statutory immunity pursuant to LSA–C.Cr.P. Article 433(A)(2). While Article 433(A)(2) may govern the admissibility of evidence or testimony in a *state* court proceeding, it is not a basis for statutory immunity. The following excerpt from *State v. Tanner* [21] is dispositive of defendants' argument:

Defendant Tanner waived his privilege against self-incrimination before the grand jury. An order could have been obtained ordering his testimony but, in that case, his compelled testimony could not have been used against him in a

subsequent prosecution. LSA–C.Cr.P. 439.1. Testimony under such an order gives the witness immunity from use of that testimony in future prosecutions. **It is significant that defendant Tanner was not offered and did not receive that statutory immunity. LSA–C.Cr.P. art. 439.1... Because Tanner received no immunity, his testimony could be used at a later criminal trial to impeach him... Since Tanner did not testify under the compulsion of an order, he cannot claim use immunity.** [22]

LSA–C.Cr.P. Article 433(A)(2) governs state grand jury proceedings and designates who may be present during the state grand jury sessions. The rule provides that only those persons who are a target of the grand jury's investigation may have an attorney present while testifying. The rule then delineates the procedure to be followed if a non-target witness "becomes a target because of his testimony [before the state grand jury]." Specifically, the target shall be informed of his right to counsel, and questioning of the witness shall cease until the witness/target obtains counsel or voluntarily and intelligently waives his right to counsel. This Court finds that Article 433(A)(2) is intended to protect the rights of a witness who, because of his testimony, **becomes a target of the state grand jury before which he is testifying.** Under such circumstances, the evidence or testimony obtained from that witness "shall not be admissible in a proceeding against him."

■ The facts in the present case do not fall under the provisions of Article 433(A)(2) for two reasons. First, this rule governs *state* court proceedings and is not applicable to federal proceedings. Federal law governs the admissibility or other use

---

**19.** Rec. Doc. No. 443, p. 3. Defendants cite *no* case law in support of this assertion.

**20.** 619 So.2d 770, 775 (La.App. 4th Cir.1993)(emphasis provided).

**21.** 425 So.2d 760 (La.1983).

**22.** *Tanner,* 425 So.2d at 763 (citations omitted)(emphasis provided).

in a federal proceeding, by the federal government, of evidence which was obtained even in violation of state law.[23] Second, defendants presented no evidence to show that Mr. Martin became a target of the East Baton Rouge Parish grand jury before which he was called to testify. He did become a target of an investigation conducted by a federal grand jury, a circumstance not provided for by the rule. There was no evidence submitted by the defendants to show that any defendant was granted statutory immunity under state law.

In fact, the evidence in the record reveals that no testimony of the defendants was compelled following invocation of the Fifth Amendment privilege against self-incrimination before the state grand jury. In its opposition to the defendants' assertion of immunity, the Government introduced a ruling by Judge Ralph Tyson, who was then a Nineteenth Judicial District Court Judge,[24] that was rendered during the state grand jury proceedings. It appears that in the spring of 1994 during the state grand jury proceedings, Mr. Moreau filed a Rule to Show Cause Why Subpoenaed Grand Jury Witness Should Not Be Held In Contempt. More specifically, the matter was scheduled "for ruling on the question regarding the application of the Fifth Amendment privilege against self-incrimination" by Stephen Edwards.[25] Judge Tyson ruled that "any assertion of the right against self-incrimination by this witness before the Grand Jury must be made in response to individual questions, subject to the right of the witness to consult with counsel before responding to such question." [26] Far from limiting the rights of the witness, Judge Tyson *affirmed* the right of Stephen Edwards to invoke his Fifth Amendment right against self-incrimination. Clearly, his testimony was *not* compelled as it was in *Kastigar*.

Defendants also argue that there was a joint state/federal investigation during the pendency of the state grand jury proceedings. Substantially the same argument was set forth by the defendants in conjunction with the motions related to the East Baton Rouge Parish grand jury materials. In addressing the argument, this Court held that there was insufficient evidence to establish any joint state/federal investigation or task force relative to riverboat gaming.[27] This issue will not be revisited.

The Court has considered all of the contentions raised by the defendants whether or not discussed in this opinion or the attached opinion and finds each to be without merit.

Therefore,

IT IS ORDERED that defendants' motion to dismiss due to *Kastigar* violations is DENIED.

### Appendix

### UNITED STATES OF AMERICA

v.

### Edwin EDWARDS, et al.

No. CR. 98-165-B-M2.

United States District Court, M.D. Louisiana.

Nov. 30, 1999.

### RULING

POLOZOLA, Chief Judge.

*1 The United States [FN1] has filed a Motion for Order Requiring Pre–Trial Production of Materials Subpoenaed from

---

**23.** See *United States v. Jones*, 185 F.3d 459 (5th Cir.1999); *United States v. Eastland*, 989 F.2d 760 (5th Cir.1993).

**24.** Judge Ralph Tyson is now a United States District Judge for the Middle District of Louisiana.

**25.** Rec. Doc. No. 506, Government Exhibit B.

**26.** Rec. Doc. No. 506, Government Exhibit B.

**27.** See Ruling issued November 30, 1999 (Rec.Doc. No. 727), a copy of which is attached to this ruling.

the East Baton Rouge Parish District Attorney Pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure. [FN2] In response to the Government's motion, the defendants have filed a Motion to Quash Government's Rule 17(c) Subpoena. [FN3] Defendants have also filed in the alternative a Motion for Discovery under Rule 16 of the Federal Rules of Criminal Procedure wherein the defendants seek to have the Government produce the state grand jury materials if the Court grants the Government's motion.

The basic issue the Court must determine is whether the United States Constitution or federal law requires the Court to suppress the state grand jury materials which may have been obtained in violation of state law. To properly resolve this issue, the Court will treat the Government's initial motion and defendants' motion to quash as motions in limine. After reviewing the entire record and the arguments of counsel, [FN4] the Court finds that under federal law, the Government may properly use and have custody of the state grand jury materials which it obtained from the District Attorney for East Baton Rouge Parish. [FN5]

FACTS

To properly understand the legal and factual issues involved in this case, it is necessary for the Court to set forth a summary of the facts and procedural history of this case. In late 1993, an East Baton Rouge Parish grand jury began investigating Edwin Edwards and others relative to Louisiana's riverboat gaming licensing process. The U.S. Attorneys for the Eastern, Middle and Western Districts of Louisiana began separate investigations into various matters involving Edwin Edwards and other defendants. Eddie Jordan, the U.S. Attorney for the Eastern District of Louisiana, assumed control of the investigation in the Middle District of Louisiana when the U.S. Attorney for the Middle District of Louisiana recused himself. During July of 1997, First Assistant

United States Attorney Jim Letten of the Eastern District of Louisiana contacted Doug Moreau, the District Attorney for East Baton Rouge Parish, and informed him of his intent to issue a grand jury subpoena for the state grand jury materials which are at issue in these motions. [FN6] It appears from Mr. Moreau's affidavit that the state investigation which he was conducting was still underway at the time of Mr. Letten's request. [FN7] Mr. Moreau states in his affidavit that he asked the United States to "make a letter of request of the desired materials so that [Mr. Moreau] could seek an order of a [state district court judge]." [FN8] In response to Mr. Moreau's request, Mr. Jordan sent a letter to Mr. Moreau dated July 25, 1997 requesting that the United States be provided with "the transcripts of any and all witnesses who have previously testified before any state grand juries in E.B.R. Parish regarding, either directly or indirectly, the licensing of riverboat casinos, including but not limited to appearances by former Governor Edwin W. Edwards and his son, Stephen Edwards." [FN9] Mr. Moreau then prepared a Motion for Release of Grand Jury Transcript and presented the motion to Judge Tim Kelley of the Nineteenth Judicial District Court for the Parish of East Baton Rouge. Judge Kelley signed an order authorizing Mr. Moreau to release the audio tapes and/or transcripts of testimony of witnesses who had testified before the state grand jury on the matters Mr. Jordan set forth in his request. [FN10] "At some subsequent date," the materials were picked up from Mr. Moreau's office by a Government representative. [FN11]

*2 Edwin and Stephen Edwards contested the release of the state grand jury materials in the state courts. On April 13, 1999, the Louisiana Supreme Court affirmed the decision of the First Circuit Court of Appeal, [FN12] holding that the turnover of the materials by Mr. Moreau to the United States was improper under state law because of their failure to make "a required showing of compelling necessi-

ty with particularity" before the evidence was released. [FN13] The Louisiana Supreme Court remanded the case to the district court for further proceedings.

On April 19, 1999, the Government filed in this Court a Motion for Order Requiring Pre–Trial Production of Materials Supboenaed from the East Baton Rouge Parish District Attorney Pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure. [FN14] On April 20, 1999, this Court ordered Mr. Moreau to produce the materials subpoenaed by the Government "on or before 9:00 on April 21, 1999." [FN15] On April 21, 1999 at 8:45 a.m., Judge Don Johnson of the Nineteenth Judicial District Court for the Parish of East Baton Rouge issued an order requiring any person in possession of grand jury materials from the 1994 E.B.R. Parish Grand Jury to "immediately and upon notice of this order or service return the same to the custody of the District Attorney, East Baton Rouge Parish." [FN16] Judge Johnson further ordered that any person desiring to obtain such materials in the future "file a written motion in this Court Section I, making the necessary showing of compelling necessity and a particularized need for said materials, all as ordered by the Louisiana Supreme Court." [FN17] On April 21, 1999, the defendants filed a Motion to Quash the Government's Rule 17(c) subpoena. [FN18] On the same day, this Court held a conference with all parties and ordered that the state grand jury materials be filed under seal with the Clerk of Court for the Middle District of Louisiana pending resolution of the issue. [FN19]

Thereafter, the Court allowed the parties to file supplemental briefs on the pending motions and heard oral arguments on the motions. The Court now turns to an analysis of the legal issues involved in this case.

LAW AND ANALYSIS

Although the Louisiana Supreme Court has determined that state law was violated in the manner the grand jury materials were produced to the United States by Mr. Moreau, this decision does not resolve the issues pending before this Court. It is well-settled that federal law governs the admissibility or other use of evidence in a federal proceeding, even if the evidence was obtained in violation of state law. [FN20] "It is a general rule that federal district courts will decide evidence questions in federal criminal cases on the basis of federal law, rather than state law." [FN21] The United States Supreme Court set forth the general rule in Elkins v. United States [FN22] wherein the Supreme Court held that a state court ruling suppressing evidence does not bar the use of such evidence in a federal proceeding. The Supreme Court stated:

*3 In determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed. [FN23]

The Fifth Circuit has also steadfastly adhered to this well-settled principle.

In U.S. v. Fossler, [FN24] a state judge suppressed evidence on the basis that it was obtained in violation of state law. In his federal prosecution, the defendant urged the federal court to suppress the same evidence which had been excluded by the state court. The Fifth Circuit, relying on Elkins, held that a federal court must make an independent inquiry regarding whether there has been an unreasonable search and seizure by the state officers. The Fifth Circuit further noted that the federal court makes this independent inquiry "whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. The test is one of federal law,

neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed." [FN25]

A similar conclusion was reached by the Fifth Circuit in United States v. Jones. [FN26] The defendant in Jones argued that evidence seized in violation of state law should be suppressed in the federal prosecution. Again, the Fifth Circuit held that the admissibility of the evidence turns on the federal court's independent inquiry into whether the search satisfied federal constitutional muster. The Fifth Circuit stated: " 'The question that a federal court must ask' when state officials secure 'evidence to be used against a defendant accused of a federal offense is whether the actions of the state officials violated the Fourth Amendment of the United States Constitution.' " [FN27]

In United States v. Eastland, [FN28] the defendant argued that the admission of evidence derived from an illegal trespass by state officers contravened principles of federalism. The Fifth Circuit rejected the defendant's argument that "allowing federal prosecutors to use evidence obtained in violation of state law thwarts the authority and ability of the states to protect their own citizens." [FN29] The Eastland court held that "[a] number of obvious, strong policy considerations militate against the exclusion of evidence obtained in violation of state law. For example, such a rule would disrupt uniformity of evidentiary rules among federal courts, and involve them in difficult interpretations of state statutory and constitutional law." [FN30] Thus, the fact that evidence was obtained in violation of state law, thereby leading a state court to conclude that suppression is required in a state prosecution, is not determinative in a federal court action. [FN31]

*4 The Government relies heavily on the case of United States v. Pignatiello, [FN32] which is very similar to the facts presented in this case. In Pignatiello, the Denver District Attorney had authorized release of transcripts and the testimony of state grand jury witnesses and documents obtained through state grand jury subpoenas to the federal prosecutors working on a federal investigation without obtaining court approval in violation of state law. The Colorado criminal rules of procedure required that court approval be obtained prior to release of the state grand jury materials. In a related state criminal proceeding against Pignatiello and other defendants, the state judge ordered suppression of the materials released in violation of state grand jury secrecy requirements and any evidence derived therefrom. In the federal criminal proceeding, the defendants moved to suppress much of the same evidence because the United States received it in violation of state law. In his opinion, the federal district judge set forth the issue before the court as follows: "Accordingly, the legal question is presented squarely—does the United States Constitution or any federal law require suppression of evidence obtained in this violation of state law?" [FN33] The federal court then discussed each of the defendant's arguments.

The defendants in Pignatiello urged that the federal court give full faith and credit to the state court orders and apply them to the federal prosecution pursuant to 28 U.S.C. § 1738. The court rejected that argument and refused to suppress the state grand jury materials in the federal criminal proceeding, stating:

There has been no final adjudication of a controversy which comes within the scope of the full faith and credit clause. Thus, this court has accepted the findings made by the state court in support of that suppression order, but the remedy is a matter of federal law. No federal constitutional or federal statutory rights were violated by the disclosure of the state grand jury materials. [FN34]

In so holding, the court in Pignatiello acknowledged that "the purpose of the Colorado court's exclusionary order was

the protection of the integrity of state grand jury proceedings." [FN35] However, the court stressed that Colorado's policy of protecting the integrity of the state grand jury proceedings was not frustrated by the federal court's conclusion. Judge Matsch noted:

The information was lawfully obtained by state law enforcement officials using appropriate procedures in connection with the state grand jury. If appropriate state court orders had been first obtained, nothing would have precluded the use of that evidence in the federal investigation and prosecution. The error was with the staff of the state district attorney, and did not involve misconduct by the federal lawyers and investigators. The state prosecutor has already been sanctioned by [the state court] suppression order which resulted in ultimate dismissal of his case. There is no basis for any belief that future unauthorized releases by Colorado state officials would be deterred by the exclusion of this evidence in the federal prosecution. [FN36]

*5 The Pignatiello court concluded its opinion by stating: "The Supreme Court has consistently recognized that the exclusionary sanction must be applied selectively to avoid impeding unacceptably the truth-finding functions of judge and jury by the suppression of probative but tainted evidence." [FN37]

The Court believes that Pignatiello and the United States Supreme Court and Fifth Circuit cases cited above are dispositive of the issues presented in this case. There is no dispute that the state court grand jury obtained the grand jury testimony in a proper manner. It is also clear and even acknowledged by the Louisiana Supreme Court in its opinion that had the federal grand jury subpoenaed the state grand jury materials, such disclosure would have been proper under state law. The U.S. Attorney did in fact want to send a grand jury subpoena for the state grand jury testimony. Had the U.S. Attorney issued such a subpoena, his conduct would have been proper and he could have received the materials requested without violating state law. When the state District Attorney decided to obtain court approval from a state court judge, such actions could hardly be said to have constituted improper prosecutorial misconduct. As noted earlier, the federal grand jury and the U.S. Attorney could have obtained the materials without the state judge's order by issuing a grand jury subpoena. Defendants' efforts to attach some evil motive to the actions of the District Attorney or the state court judge are not supported by the record. The fact that the Louisiana Supreme Court found that they did not follow proper state law procedures cannot be read to mean that the District Attorney and the state trial judge were guilty of misconduct. This Court's conclusion is supported by the fact that the Louisiana Supreme Court remanded the case to the district court to allow a hearing to determine if the requisite particularized need could be shown. Simply stated, this Court is faced with the same legal and factual issue Judge Matsch was faced with in Pignatiello—does the U.S. Constitution or any federal law require suppression of evidence obtained in violation of state law? This Court agrees with the holding in Pignatiello and is bound by the precedent set forth by the United States Supreme Court and the Fifth Circuit. Thus, the Court finds that the state grand jury materials may be given to the U.S. Attorney and used in this federal proceeding. Their use is not barred because these documents may have been obtained in violation of state law.

As noted earlier, defendants have failed to present evidence of misconduct or wrongdoing on the part of Mr. Moreau. However, even assuming for purposes of argument that there was "error" on the part of the state officials in disclosing the state grand jury materials to the U.S. Attorney, such error "did not involve mis-

conduct by the federal lawyers and investigators." [FN38] The U.S. Attorney for the Eastern District and his assistants were acting in good faith in their reliance upon Mr. Moreau's procedural request. [FN39] The state grand jury materials should not be suppressed from use in this federal criminal prosecution under the facts of this case. This Court further finds that the good faith doctrine set forth in U.S. v. Leon, [FN40] wherein the Supreme Court established the good faith exception to the exclusionary rule in the context of the Fourth Amendment, is also applicable under the facts of this case. [FN41]

*6 Finally, the Court must note that although neither Rule 6(e) of the Federal Rules of Criminal Procedure nor Article 434 of the Louisiana Code of Criminal Procedure directly governs the transfer of the state grand jury materials under the circumstances in the present case, the policies behind the general rule of grand jury secrecy are essentially the same in both state and federal court proceedings. Moreover, it is significant that the materials at issue in this case were transferred from one entity upon which secrecy is imposed to another entity upon which secrecy is also imposed. Therefore, the secrecy of the state grand jury proceedings was not seriously compromised by the disclosure to the U.S. Attorney for presentment to the federal grand jury.

This rationale is supported by the Fifth Circuit's decision in In Re Grand Jury Subpoena Dated December 17, 1996. [FN42] This case involved the disclosure of sealed state agency documents to a federal grand jury which related to a mediation proceeding and were protected by a mediation privilege of secrecy under state law. A federal grand jury subpoena was issued to the custodian of records for the Texas Agricultural Mediation Program ("TAM"). The parties to the mediation proceeding moved to intervene and quash the subpoena on the basis of the mediation privilege. The Fifth Circuit upheld the disclosure of the mediation documents to the federal grand jury, stating:

> We observe, however, that due to the secrecy of grand jury proceedings, see Fed.R.Crim.P. 6(e), the confidentiality of the Moczygembas mediation sessions will not be severely compromised by the disclosure of information relating to those sessions to the grand jury. Of course, if the grand jury returns an indictment, such information may become public. In returning an indictment, however, a grand jury indicates that it has found probable cause to believe that a criminal offense has occurred. We are satisfied that Congress did not intend that [7 U.S.C. § 5101(c)(3)(D) ] be used to shield wrongdoing arising out of the state agricultural loan medication process. Indeed, even the ADRA provides for disclosure where a court determines that disclosure is necessary to "help establish a violation of law ... of sufficient magnitude in the particular case to outweigh the integrity of dispute resolution proceedings in general by reducing the confidence of parties in future cases that their communications will remain confidential." See 5 U.S.C. § 574(a)(4)(B). Thus, if an indictment is returned, any interest the Moczygembas have in the confidentiality of their mediation sessions will have to give way to the public interest in the administration of criminal justice.[FN43]

The rationale provided by the Fifth Circuit can be applied in the present case, given the transfer from one "protected" proceeding to another "protected" proceeding. The Fifth Circuit was careful to note in In Re Grand Jury Subpoena Dated December 17, 1996 that the public's interest in the administration of justice outweighs the confidentiality of a mediation session if there is probable cause to believe a crime has been committed.

*7 Defendants raised two other issues in their briefs. Defendants claim that the defendants are immune from federal pros-

ecution because the "statutory immunity granted to the defendants in exchange for their state grand jury testimony is binding on the federal government." [FN44] Defendants rely on Kastigar v. United States [FN45] and United States v. McDaniel. [FN46] The Court will defer ruling on this issue at this time because it is the Court's understanding that a specific motion based on Kastigar will be filed by the defendants within the delays to be set by the Court in this opinion. [FN47]

Defendants also contend that there was a joint state/federal investigation during the pendency of the state grand jury proceedings. The defendants' argument is premised on the allegation that there was wrongdoing on the part of Mr. Moreau which must, by virtue of a joint state/federal investigation, be imputed to the United States. As previously stated herein, there is no evidence to support the defendants' assertion of misconduct on the part of Mr. Moreau. Precisely what procedure should have been used to authorize disclosure of state grand jury materials to a U.S. Attorney was not crystal clear at the time the grand jury materials were ordered released by Judge Kelley. Furthermore, a review of the decisions of the First Circuit Court of Appeal and the Louisiana Supreme Court makes this evident. As noted earlier, the fact that the Louisiana Supreme Court ultimately determined that an improper procedure was used does not equate to misconduct which could form the basis for excluding the evidence.

Moreover, there is insufficient evidence to establish any such "joint" state/federal investigation. Mr. Moreau stated unequivocally in his affidavit that the investigation into the process used to award licenses to riverboat gaming applicants was conducted independently by his office:

> Around mid–1993, my office began an investigation into the process used in the awarding of licenses to Riverboat Gaming applicants. The investigation began initially because of a complaint received from an unsuccessful applicant, and quickly expanded into an investigation of the entire licensing process. The Grand Jury of the 19th Judicial District conducted parts of the overall investigation, and heard the testimony of numerous witnesses, and received other evidence. The investigation was conducted independently by the District Attorney's office and Grand Jury, and not in coordination with any other law enforcement entity, either state or federal, or a combination thereof, including the Louisiana State Police or the Federal Bureau of Investigation. Specifically, the investigation conducted by my office and the Grand Jury was in no way a "joint investigation" by a "joint state/federal task force," and I did not consider myself or any employee of my office to be in an agency relationship with the United States Attorney's Office, the FBI, or any other federal department or agency. [FN48]

*8 In addition, the United States submitted the affidavit of Lt. Dane Morgan, a member of the State Police who has been assigned to the Gaming Enforcement Section since 1992. Lt. Morgan stated that he was not aware of any joint initiatives or task forces between the Louisiana State Police and the FBI relating to riverboat gaming. Considering the testimony of Mr. Moreau, who was in charge of the grand jury at issue, and the statements of Lt. Morgan, the Court finds that the affidavit of Rodney Baum submitted by the defendants is simply insufficient to overcome the overwhelming evidence that no joint state/federal investigation or task force existed to investigate riverboat gaming at the time the state grand jury materials were disclosed to the Government. Defendants' argument is without merit.

Defendants also cite the "McDade Amendment," [FN49] in support of their proposition that federal prosecutors should be subject to Louisiana's state grand jury secrecy laws. This statute provides that federal prosecutors are subject to state

rules of professional conduct. Because no state rule of professional conduct is at issue in the present case, the McDade Amendment is not applicable.

Finally, the Court must resolve the defendants' Motion for Discovery under Rule 16 of the Federal Rules of Criminal Procedure since the Court has ruled that the state grand jury materials may be used in these proceedings and turned over to the United States Attorney for the Eastern District of Louisiana. The Government is obliged to produce certain named materials in accordance with Rule 16 and this Court's prior discovery orders including its orders pertaining to Brady and Giglio and Jencks Act materials. The Court notes that Rule 16(a)(1)(A) provides that the Government must disclose to the defendants "recorded testimony of the defendant before a grand jury which relates to the offense charged." The Court assumes the Government will comply with its obligations under Rule 16 without further orders of the Court. Should it be necessary, the Court is prepared to issue a separate opinion on the issue.

Accordingly,

IT IS ORDERED that the Government's Motion in Limine be GRANTED and defendants' Motion in Limine be DENIED.

IT IS FURTHER ORDERED that the East Baton Rouge Parish grand jury materials which were filed under seal with the Clerk of Court be returned to the custody of the United States Attorney for the Eastern District of Louisiana.

IT IS FURTHER ORDERED that the state grand jury materials may be used in these proceedings, subject to the right of the defendants to object to their admissibility at the trial of this case.

IT IS FURTHER ORDERED that the Motion for Order Requiring Pre–Trial Production of Materials Subpoenaed from the East Baton Rouge Parish District Attorney Pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure (Rec. Doc. No. 168) is DENIED as moot.

IT IS FURTHER ORDERED that the Motion to Quash Government's Rule 17(c) Subpoena (Rec.Doc. No. 172) is DENIED as moot.

*9 IT IS FURTHER ORDERED that the defendants' Motion for Discovery is GRANTED to the extent that the United States shall produce on or before December 6, 1999 any materials required under Rule 16 of the Federal Rules of Criminal Procedure, the Court's scheduling order, and any prior discovery rulings, except for Jencks Act material which shall be produced within the time set by the scheduling order.

IT IS FURTHER ORDERED that the any Kastigar motions shall be filed on or before December 7, 1999. The Government's response shall be filed on or before December 14, 1999.

FN1. The United States is sometimes referred to as "the Government" in this opinion.

FN2. Rec.Doc. No. 168.

FN3. Rec.Doc. No. 172.

FN4. The Court heard oral argument on the pending motions on two occasions to allow the parties to properly present their arguments to the Court.

FN5. In allowing the Government to use and have custody of the state grand jury materials, the Court is not ruling at this time that all or part of these documents will be admitted into evidence at the trial of this case.

FN6. Rec.Doc. No. 454, Exh. A. Throughout this ruling, the materials of the East Baton Rouge Parish grand jury at issue will sometimes be referred to as the "state grand jury materials."

FN7. Rec.Doc. No. 454, Exh. A.

FN8. Rec.Doc. No. 454, Exh. A.

FN9. Rec.Doc. No. 454, Exh. B.

FN10. Rec.Doc. No. 454, Exh. D.

FN11. Rec.Doc. No. 454, Exh. A.

FN12. In Re Grand Jury, 737 So.2d 1 (La.1999).

FN13. In Re Grand Jury, 737 So.2d at 11.

FN14. At the time this motion was filed, the state grand jury materials were in the custody of the United States Attorney for the Eastern District of Louisiana.

FN15. Rec.Doc. No. 171.

FN16. Rec.Doc. No. 454, Exh. G.

FN17. Rec.Doc. No. 454, Exh. G.

FN18. Rec.Doc. No. 172.

FN19. Rec.Doc. No. 176.

FN20. See United States v. Jones, 185 F.3d 459 (5th Cir.1999); United States v. Eastland, 989 F.2d 760 (5th Cir.1993).

FN21. United States v. Williams, 124 F.3d 411, 428 (3rd Cir.1997), cert. denied 118 S.Ct. 698, 139 L.Ed.2d 642, 66 USLW 3399 (1998) (absent a federal statutory provision to the contrary, there is no basis for holding that federal law requires suppression here simply because the Pennsylvania courts might have required suppression in a state prosecution).

FN22. 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1959).

FN23. Elkins, 364 U.S. at 223–24, 80 S.Ct. at 1447.

FN24. 597 F.2d 478 (5th Cir.1979).

FN25. Fossler, 597 at 481 (emphasis provided), citing Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

FN26. 185 F.3d 459 (5th Cir.1999).

FN27. Jones, 185 F.3d at 463, citing U.S. v. Walker, 960 F.2d 409, 415 (5th Cir.1992).

FN28. 989 F.2d 760 (5th Cir.1993).

FN29. 989 F.2d at 766.

FN30. 989 F.2d at 766–767 (emphasis provided).

FN31. U.S. v. Williams, 124 F.3d at 427.

FN32. 628 F.Supp. 68 (D.Colo.1986).

FN33. Pignatiello, 628 F.Supp. at 71.

FN34. 628 F.Supp. at 71 (citations omitted) (emphasis provided). The court relied heavily upon the Supreme Court's opinion in Elkins v. United States. See footnote 25, infra.

FN35. Pignatiello, 628 F.Supp. at 71.

FN36. Pignatiello, 628 F.Supp. at 71 (emphasis provided).

FN37. 628 F.Supp. at 71.

FN38. See Pignatiello, 628 F.Supp. at 71.

FN39. It appears to this Court that Mr. Moreau was acting in good faith. Defendants assert that "the [law governing the release of state grand jury materials to the U.S. Attorney] was clear, known, and unchanged ... This is not some obscure quirk of Louisiana law." (Rec. Doc. No. 487, p. 6). The Louisiana First Circuit Court of Appeal thought otherwise. The appellate court stated that the case presented "res nova issues." See Rec.Doc. No. 443, Exhibit 9. Similarly, the Louisiana Supreme Court seemed to be addressing a situation which was not clearly provided for under state or federal law.

FN40. 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

FN41. In so finding, the Court is not ruling on the admissibility of the state grand jury materials in this federal prosecution. The admissibility of the materials is not before the Court at this juncture.

FN42. 148 F.3d 487 (5th Cir.1998), cert. denied sub. nom. 119 S.Ct. 1336, 143 L.Ed.2d 500, 67 USLW 3543 (1999).

FN43. Grand Jury Subpoena, 148 F.3d at 493 (emphasis provided).

FN44. Rec.Doc. No. 443, p. 11.

FN45. 406 U.S. 441, 92 S.Ct. 2478, 32 L.Ed.2d 212 (1972).

FN46. 482 F.2d 305 (8th Cir.1973).

FN47. If the Court is in error on this assumption, and no new Kastigar motion is filed, the Court will issue a separate

736

ruling on the Kastigar issue raised herein.

FN48. Rec.Doc. No. 506, Exh. A.

FN49. 28 U.S.C. § 520(B).