513 F.2d 47
 UNITED STATES of America, Plaintiff-Appellant,
v.
Andrew SCASINO a/k/a Bob White, Pasquale Scasino a/k/a Pat
White, Donald Hepburn, Joseph Lo Paro, Harry Cowen, William
T. Mayo, John Biagio Scasino, Lois Bowden Hamlen, Marion
Cigalese Efantis a/k/a "Chickie", James Rand, Izaac M.
Silber, and Richard Curran, Defendants-Appellees.
 No. 73-2855.
 United States Court of Appeals,
Fifth Circuit.
 May 16, 1975.
 
 Robert W. Rust, U. S. Atty., Miami, Fla., James A. Rothchild, Atty., App. Sec., Crim. Div., Dept. of Justice, Washington, D. C., Marilu Marshall, U. S. Dept. of Justice, Miami, Fla., for plaintiff-appellant.
 Melvyn Kessler, Miami, Fla., for Andrew Scasino, Pasquale Scasino, Donald Hepburn, John Biagio Scasino.
 Arthur Massey, Miami, Fla., for Joseph Lo Paro.
 Joseph Pardo, Miami, Fla., for James Rand and Izaac Silber.
 Arthur Stark, Miami, Fla., for Harry Cowen.
 Angelo Ali, Miami, Fla., for Richard J. Curran.
 Donald I. Bierman and Neal R. Sonnett, Miami, Fla., for Lois Bowden Hamlen.
 Louis Lesperance, Miami, Fla., for William T. Mayo.
 Appeal from the United States District Court for the Southern District of Florida.
 Before WISDOM and DYER, Circuit Judges, and KRAFT,* District Judge.
 DYER, Circuit Judge:
 
 
 1
 Defendants were indicted on one count of conducting a gambling operation and one count of conspiracy to run a gambling operation which had remained in operation continuously for more than thirty days, had a gross revenue of more than $2,000 in a single day, and involved five or more persons in the conduct, management, supervision, direction and ownership of a gambling operation in violation of 18 U.S.C.A. § 1955 and 18 U.S.C.A. § 371. They also were charged with five counts of unlawfully, willfully and knowingly using a facility in interstate commerce with intent to promote, manage, establish and carry on a gambling operation in violation of 18 U.S.C.A. § 1952. Prior to trial defendants moved to suppress evidence obtained from a wiretap and search on the grounds that the evidence was tainted by a prior illegal wiretap. The district court granted the motion and the government appeals. Because defendants have no standing to challenge the first wiretap and consequently cannot suppress the second wiretap and search as derived therefrom, we reverse.
 
 
 2
 The government's evidence consisted primarily of telephone conversations intercepted pursuant to court authorized electronic surveillance (Scasino wiretap) from December 17 to December 23, 1971, and gambling paraphernalia seized under search warrants executed on January 6, 1972. The finding of probable cause for the wiretap was supported by information from a confidential informant, observations of government agents, and transcripts of four telephone conversations intercepted in a prior wiretap (Vitanza wiretap). The probable cause for the January, 1972, search was based on the results of the Scasino wiretap.
 
 
 3
 Subsequent to the execution of the two wiretaps the Vitanza wiretap was discovered to contain a Giordano defect and was therefore illegal.[1] The defendants in this case moved to suppress the evidence obtained from the Scasino wiretap and the January, 1972, search as tainted fruit of the illegal Vitanza wiretap. The district court in granting the motion found that the Vitanza wiretap gave substantial impetus to the investigation of this case and that the government failed to demonstrate an independent basis of probable cause for the Scasino wiretap. Because defendants have no standing to suppress the illegal Vitanza wiretap or evidence derived therefrom, we find it unnecessary to pass on the correctness of the district court's determinations.[2]
 
 
 4
 Standing is governed by 18 U.S.C.A. § 2518(10)(a), which provides that any "aggrieved person" may suppress the contents of an unlawfully intercepted communication or evidence derived therefrom. "Aggrieved person" is defined in 18 U.S.C.A. § 2510(11) as "a person who was a party to any intercepted wire or oral communication or a person against whom the interception was directed." Strongly supportive of the government's position that defendants are not aggrieved persons is United States v. Gibson, 4 Cir. 1974, 500 F.2d 854. Gibson attempted, as the defendants did here, to suppress a second wiretap, the probable cause of which was based partly on intercepted conversations obtained from a prior wiretap defective under Giordano. The initial illegal (Mantello) wiretap provided information to support a finding of probable cause for the issuance of a wiretap order against Commings. The Commings tap provided evidence damaging to Gibson. Since Gibson was not directly implicated by the Mantello wiretap, the court concluded that he was not a person "aggrieved" by that wiretap and held suppression to be improper. We are faced with a similar factual situation. The Vitanza wiretap directly implicated Andrew Scasino since his conversations were overheard, but there was no allusion to these defendants or their conduct. It gave impetus to the investigation of Andrew Scasino and to the Scasino wiretap, which lead to the discovery that these defendants were engaged in illegal gambling activities. But, as in Gibson, they were not directly implicated by the initial wiretap.
 
 
 5
 Defendants attempt to distinguish Gibson by asserting that the gambling operations which were the targets of the Vitanza and Scasino wiretaps constituted but one gambling operation. They argue that since the government requested postponement of the Vitanza wiretap inventory disclosure until the Scasino interceptions were completed, the government must have treated the two operations as but one operation. If that is the case, defendants argue, the Vitanza wiretap was "directed" at them, making them "aggrieved persons" within 18 U.S.C.A. § 2510(11). They suggest that the term "aggrieved persons" covers not only those persons whose conversations were intercepted or on whose premises the conversations occurred, but also those persons named in the wiretap order. Although defendants were not specifically named in the Vitanza wiretap order, the order did cover "others as yet unknown." Consequently, the defendants urge that since the Vitanza wiretap was aimed at an operation of which the Scasino operation was a part, they were among "others as yet unknown," and the wiretap was therefore directed at them.
 
 
 6
 We need not determine whether those named in a wiretap order, including those arguably covered by language such as "others as yet unknown," have standing to suppress evidence derived from an illegal wiretap, since, because it is clear from the record that not one but two independent gambling operations were involved, the first wiretap could not have been "directed" at these defendants. The operation which was the subject of the Vitanza wiretap was supervised and directed by Vitanza. The second operation, the target of the Scasino wiretap, was controlled by Andrew Scasino and Pasquale Scasino. Each operation employed its own collectors to accept wagers on behalf of the operation. The Scasino operation relied significantly on "layoffs" of large bets from smaller operators. Vitanza made lay-offs to persons known only as "Vic" and "Paul," but did not lay-off to the Scasino operation. Both operations had independent sources of "line information" or odds on various sporting events. None of Vitanza's confederates were involved in the Scasino operation, and none of the defendants or other Scasino confederates were involved in the Vitanza operation. The only thread to connect the two operations was the interception of four conversations between Vitanza and Andrew Scasino, out of more than one thousand conversations heard in the Vitanza wiretap, in which Scasino passed line information to Vitanza. The actual conduct of the two operations never touched. The postponement of the Vitanza inventory was logical. Since Alfred Vitanza and Andrew Scasino, heads of the respective operations, were acquainted, Vitanza could have tipped Scasino to the fact of the Vitanza tap, and the federal investigation of Scasino could have been prejudiced by Scasino's resulting caution. It does not follow that the two operations were conducted as a unit. Thus, the record clearly shows two independent operations sharing a miniscule bit of information.
 
 
 7
 In the circumstances of this case the defendants clearly cannot be considered aggrieved persons within the meaning of the statute. The Supreme Court in Alderman v. United States, 1968, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176, has read the legislative history of the wiretap statute as intending the statute to reflect the existing law of standing in wiretap cases.[3] See also United States v. King, 9 Cir. 1973, 478 F.2d 494, 506; United States v. Ahmad, M.D.Pa.1972, 347 F.Supp. 912, 933, aff'd in part, rev'd in part on other grounds, 3 Cir. 1973, 482 F.2d 171. Under prestatutory fourth amendment law, one does not have standing to suppress an illegal wiretap unless his conversations were overheard or the conversations occurred on his premises. Alderman, supra, 394 U.S. at 176, 89 S.Ct. 961. See also Goldstein v. United States, 1941, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312; United States v. Kane, 5 Cir. 1971, 450 F.2d 77.
 
 
 8
 Consequently, under 18 U.S.C.A. § 2510(11) an "aggrieved person" is one who participated in the intercepted conversation or on whose premises the conversation occurred. United States v. King, supra at 506; In re Dellinger, 2 Cir. 1972, 461 F.2d 389, 392; United States v. Ahmad,supra at 933; United States v. Iannelli, W.D.Pa.1972, 339 F.Supp. 171, aff'd, 3 Cir. 1973, 477 F.2d 999. None of the defendants involved in this appeal were participants in any conversations intercepted by the Vitanza wiretap, nor did any of the conversations occur on their premises. They therefore are not "aggrieved persons" of the Vitanza wiretap, and they are precluded from asserting its illegality.[4] Thus, since one cannot assert indirectly what he cannot assert directly, defendants have no standing to suppress evidence obtained from the Scasino wiretap or from the January, 1972, search as evidence derived from an illegal wiretap. See Alderman, supra, 394 U.S. at 171-76, 89 S.Ct. 961, and cases cited therein.
 
 
 9
 Reversed and remanded for further proceedings not inconsistent with this opinion.
 
 
 10
 Reversed and remanded.
 
 
 
 *
 Senior District Judge of the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 In United States v. Giordano, 1974, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341, an order authorizing or approving the interception of wire or oral communications was determined to be defective since the application for the order was not authorized by the Attorney General or by an Assistant Attorney General specially designated by the Attorney General as required by 18 U.S.C.A. § 2516(1). Accord, United States v. Robinson, 5 Cir. 1973, 472 F.2d 973
 
 
 [2]
 To uphold the suppression order of the district court defendants suggested on oral argument that the Scasino wiretap be treated as an extension of the illegal Vitanza wiretap. When a statutorily authorized extension of an illegal wiretap under 18 U.S.C.A. § 2518(5) is involved, then no standing question is raised since the original wiretap is simply continued for a longer period of time and therefore if suppression is appropriate for the original, it is appropriate for the "extension." United States v. Giordano, 1974, 416 U.S. 505, 529-33, 94 S.Ct. 1820, 40 L.Ed.2d 341. Giordano involved the extension of the original wiretap for a period of time beyond that authorized in the original order at the same telephone number that was the subject of the original wiretap. We are not confronted with an extension order or even anything analogous to an extension order of the Vitanza wiretap, but rather with two separate wiretaps, months apart, at two separate, independent gambling operations and different telephone numbers
 
 
 [3]
 In its recent wiretapping and eavesdropping legislation, Congress has provided only that an "aggrieved person" may move to suppress the contents of a wire or oral communication intercepted in violation of the Act. Title III, Omnibus Crime Control and Safe Streets Act of 1968, 82 Stat. 221 (18 U.S.C. § 2518(10)(a) (1964 ed. Supp. IV)). The Act's legislative history indicates that "aggrieved person," the limiting phrase currently found in Fed.Rule Crim.Proc. 41(e), should be construed in accordance with existent standing rules. See S.Rep.No.1097, 90th Cong., 2d Sess., at 91, 106. Id. at 175, n. 9, 89 S.Ct. at 968
 
 
 [4]
 Defendant Andrew Scasino was a party to four conversations intercepted in the Vitanza wiretap. However, he died in March, 1973, prior to the April, 1973, suppression hearing. Consequently, the issue as to him is moot