**UNITED STATES of America**

v.

**Andrew MARTIN**

**No. CR. A. 99–69.**

United States District Court, E.D. Louisiana.

April 11, 2001.

James R. Heavner, Jr., Miller, Cassidy, Larroca & Lewin, LLP, Washington, DC, Ryan Jared Roemrshauser, Garcia & Bishop, Metairie, LA, Mark S. Stein, Lowe, Stein, Hoffman, Allweiss & Hauver, New Orleans, LA, Servando C. Garcia, III, Garcia & Bishop, Metairie, LA, Daniel E. Small, Butters, Brazilian & Small, LLP, Boston, MA, William H. Jeffress, Jr., Baker Botts, LLP, Washington, DC, for defendant.

## ORDER AND REASONS

BARBIER, District Judge.

On March 11, 1999, a grand jury sitting in the Eastern District of Louisiana returned an indictment charging defendant Andrew Martin ("Martin") with several criminal tax violations. At trial, the Government intends to offer nine recorded conversations which were intercepted pursuant to 18 U.S.C. §§ 2510, *et seq.* (Title III of the Omnibus Crime Control and Safe Streets Act) and obtained in conjunction with an investigation into the dealings of former Louisiana governor Edwin W. Edwards. Martin filed an **Amended Motion to Suppress Fruits of Wire, Oral and Electronic Surveillance** (Rec.Doc. 87) [1] in which he seeks to suppress those conversations. In the event the Court concludes that he is not entitled to outright suppression at this juncture, Martin requests a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). He also filed a **Motion to Dismiss for *Kastigar* Violations** (Rec.Doc. 44) and **Motion to Dismiss for Prosecutorial Misconduct** (Rec.Doc. 45) seeking to have the indictment dismissed based on events arising out of his prior appearance before a state grand jury. All three motions were heard on February 15, 2001, at which time the Court took them under advisement.

Having now considered the memoranda, the exhibits, the applicable law, and the arguments presented by counsel, the Court concludes, for the reasons stated below, that all of the motions should be DENIED.

## I. Martin's Motion to Suppress Fruits of Wire, Oral and Electronic Surveillance

### A. Background

The conversations under attack in the instant motion were intercepted during an investigation into matters unrelated to the crimes charged in the current indictment. They are a small subset of an expansive collection of wire, oral, electronic, and video surveillance obtained in conjunction with an investigation of former Louisiana governor Edwin W. Edwards.

The investigation was born out of allegations made by Michael and Patrick Graham ("the Grahams"). In April 1996, the Grahams told federal agents that they were involved in an illegal payoff scheme involving Edwin W. Edwards ("EWE"). The Grahams claimed that payments were made to EWE during his term in office in order to obtain his support for the Grahams' proposal to construct a juvenile detention facility in Jena, Louisiana. The payments were allegedly made through Cecil Brown ("Brown"), a Louisiana businessman and friend of EWE. Federal agents obtained consensual recordings of conversations between Brown and Patrick Graham in an attempt to corroborate the Grahams' allegations.

In June 1996, the Government filed an application, in accordance with 18 U.S.C. §§ 2510, *et seq.* (Title III of the Omnibus Crime Control and Safe Streets Act or "Title III") in the Western District of Louisiana seeking authorization to intercept pertinent communications on Brown's

---

**1.** According to Martin's counsel, this amended motion completely replaces the motion to suppress that was filed on July 21, 1999. (Rec.Doc. 56). Shortly after Martin filed that motion, Judge Sear, to whom this case was originally assigned, stayed all proceedings in the case pending the conclusion of the trial in

*United States v. Edwards, et al*, (M.D.La. CR98–165B–M2) in the Middle District of Louisiana. *See* Rec. Doc. 60. Martin was a codefendant in that case. The amended motion currently before the Court was filed after the conclusion of the *Edwards* case when the stay in Martin's case terminated.

home and business telephones ("Brown T–III"). The application asserted probable cause based on the Grahams' allegations about the Jena project as well as excerpts from the consensual recordings made between Brown and Patrick Graham. The district judge issued an order authorizing the interception. While none of the conversations intercepted pursuant to the Brown T–III were incriminating with respect to Martin, one of his conversations, social in nature, was intercepted.

After several months of intercepting communications via the Brown T–III, the Government sought and obtained an order authorizing a wiretap on EWE's home telephone.[2] Probable cause for this surveillance was based upon the same evidence that had been used to obtain the Brown T–III but supplemented by conversations intercepted during the Brown T–III. Finally, in late 1996, the court authorized oral and visual surveillance of the law offices of EWE and his son Stephen W. Edwards ("SWE"). Again, probable cause for each of these orders was based upon the same evidence offered in support of the Brown T–III but supplemented by the cumulative surveillance evidence captured pursuant to the preceding surveillance orders. Although each surveillance order was only valid for a thirty day period, the district judges who monitored the surveillance continued to extend the orders through April 1997.

For purposes of the current indictment, the Government seeks to introduce nine conversations intercepted pursuant to the T–III orders described above—eight captured during the surveillance of EWE's home and office and one captured during the surveillance of SWE's office. None of the conversations captured on the Brown T–III are relevant to the criminal tax charges currently pending.

As a result of the Government's investigation and the expansive surveillance described above, numerous individuals were charged with various criminal offenses resulting in prosecutions in both the Eastern and Middle Districts of Louisiana. Accordingly, the legality of the surveillance that captured the conversations at issue in this motion has been attacked in prior criminal proceedings by various defendants,[3] including Martin who was a co-defendant in *United States v. Edwin Edwards, et al.* (M.D.La.CR98–165B–M2) (the riverboat license extortion case). The significance of Martin's prior unsuccessful attempt to challenge the legality of the Title III orders during the *Edwards* case is discussed later in this ruling.

### B. The Parties' Contentions

In his first argument, Martin asserts that the initial Brown T–III wiretap was obtained in violation of Title III and the Fourth Amendment because the Government's affidavit did not establish probable cause and failed to demonstrate "necessity" as required by 18 U.S.C. § 2518(3)(c). Accordingly, any evidence captured on the Brown T–III is subject to suppression as is any evidence derived from it. And given that the EWE and SWE surveillances were authorized based upon communications intercepted on the Brown T–III, they too are tainted so that all evidence gathered during them, including the conversations under attack in this motion, must be suppressed.

---

**2.** The initial EWE T–III order was issued in October 1996. This order and those to follow were obtained in the Middle District of Louisiana.

**3.** *United States v. Edwin Edwards, et al.* (M.D.La.CR98–165B–M2); *United States v. James Harvey Brown* (M.D.La.CR99–151B–M2); *United States v. Cecil Brown* (E.D.La. CR01–004).

Second, Martin argues that even if the Brown T–III was valid, there was still no probable cause to believe that a wiretap of EWE's home and office phones would reveal evidence of criminal activity. And even if the initial EWE T–III was supported by probable cause, the extensions to the initial order were not. Accordingly, all nine conversations must be suppressed.

Finally, Martin argues that the conversation gathered during the surveillance of SWE's office must be suppressed because that surveillance was conducted without court authorization. In the event that the Court does not determine that the nine conversations should be suppressed outright, Martin argues that he has made a substantial preliminary showing that the agents' affidavits contained intentional and/or reckless false statements or material omissions so as to entitle him to an evidentiary hearing pursuant to *Franks v. Delaware, supra.*

In opposition, the Government argues that Martin's prior unsuccessful attempt to attack the T–III surveillance during the *Edwards* case should preclude him from doing so in this case. Asserting essentially the same arguments as he does here, he lost that motion on the merits when the district court found that all of the surveillance complied with Title III and the Fourth Amendment. Accordingly, the Government contends that Martin should be bound by that ruling, and therefore, precluded from relitigating the validity of the T–III orders.

As to Martin's first argument on the merits, the Government contends that he lacks standing to challenge the validity of the Brown T–III. Therefore, the illegality *vel non* of that surveillance is irrelevant to this case. Regardless of Martin's standing

with respect to the Brown T–III, the Government argues that all of the initial T–III orders as well as their subsequent extensions were obtained in compliance with Title III and the Fourth Amendment. The Government also argues that Martin has not made a showing so as to entitle him to a *Franks* hearing.[4]

## C. Preclusion

■ As an initial matter, the Court must consider the implications, if any, of Martin's prior unsuccessful attempt to attack the validity of the T–III surveillance when he was a codefendant in the *Edwards* case. Martin's motion in this case asserts essentially the same arguments that he raised in the *Edwards* motion to suppress. If this were a civil case, principles of issue preclusion or collateral estoppel would undoubtedly preclude Martin from relitigating the validity of the T–III surveillance. The question then is whether those principles apply in the criminal context so as to prevent Martin from having the current motion to suppress decided on the merits.

In this circuit, there is no controlling authority as to the constitutional validity of applying the type of preclusion that the Government seeks to impose in this criminal case. In *United States v. Hamilton,* 931 F.2d 1046, 1052–53 (5th Cir.1991), the issue was raised before the Fifth Circuit Court of Appeals but the court disposed of the case on other grounds. Various courts outside of this circuit have addressed the issue of collateral estoppel in the criminal context but even among those courts there is disagreement. *See United States v. Price,* 13 F.3d 711, 720 (3d Cir.1994) (discussing the disagreement among the feder-

---

4. The parties contentions on the merits are the same as those argued in the *Edwards* case. Those contentions are discussed in greater

detail by Judge Polozola at *United States v. Edwards,* 124 F.Supp.2d 387, 390–91 (M.D.La. Aug.22, 2000).

al courts as to whether collateral estoppel applies in the criminal context). While some courts readily preclude a criminal defendant from subsequently relitigating issues "collateral" to the elements of the offense charged, *see, e.g., United States v. Rosenberger,* 872 F.2d 240 (8th Cir.1989); *United States v. Thoresen,* 428 F.2d 654 (9th Cir.1970), other courts have recognized that such a course of action raises difficult due process questions. *Price,* 13 F.3d at 720 (citing *Hamilton,* 931 F.2d at 1053 n. 1.; Allan D. Vestal, *Issue Preclusion and Criminal Prosecution,* 65 Iowa L.Rev. 281 (1980)); *United States v. Harnage,* 976 F.2d 633, 636 n. 2 (11th Cir. 1992). The United States Supreme Court has not decided the issue.[5]

Martin urges the Court to follow the Eleventh Circuit's approach to collateral estoppel in the criminal context as set out in *United States v. Harnage, supra.* In *Harnage,* the government sought to preclude a criminal defendant from relitigating a prior unsuccessful attempt to quash a subpoena in a different court. The district court sided with the government but the appellate court reversed after concluding that applying collateral estoppel in the criminal context would create more problems than the doctrine was designed to solve.[6] *Id.* at 635. The court also noted the due process implications that would inevitably arise by applying the doctrine against the accused, *id.* at 636 n. 2; and recognized that at least one Supreme Court Justice had previously expressed

doubts as to the validity of using collateral estoppel against a criminal defendant, *id.* at 635 (quoting *Ashe,* 397 U.S. at 464–65, 90 S.Ct. at 1205 (Burger, C.J., dissenting)).

After reviewing the pertinent cases, the Court concludes that the reasoning applied in *Harnage* is sound and should govern in this case given the absence of any controlling authority in this circuit to support the Government's position on this issue. The Court also agrees with Martin's assertion that, as the accused, his interest in seeking to exclude evidence allegedly obtained in violation of law outweighs the judicial economy typically derived from applying collateral estoppel. Accordingly, the Court concludes that Martin's motion to suppress should be decided on the merits.

## D. Analysis of the Parties' Contentions

As discussed above, Martin's first argument in favor of suppression is grounded on the alleged illegality of the Brown T–III surveillance. The Government asserts that Martin lacks standing to challenge the Brown T–III. Martin recognizes that his ability to challenge any evidence as a fruit of the Brown T–III is predicated upon his having standing to directly challenge the validity of the Brown T–III.

### i. Standing

■ Section 2518(10)(a) of Title III states that any "aggrieved person" may move to suppress the contents of any wire

---

**5.** The United States Supreme Court has held, however, that collateral estoppel can be asserted against *the government* in a subsequent criminal prosecution. *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The Court based its reasoning on principles embodied in the constitutional protections afforded defendant by the Double Jeopardy Clause. *Id.* at 443–45, 90 S.Ct. at 1194–95. Accordingly, the Government can garner no support from *Ashe.*

**6.** For instance, in addition to determining whether the case meets the base criteria for applying collateral estoppel, the district court would be forced to determine whether defendant received adequate assistance of counsel in the prior criminal proceeding. *Harnage,* 976 F.2d at 636.

or oral communication intercepted pursuant to Title III, *or any fruits derived therefrom,* on the grounds that the communication was unlawfully intercepted or was not made in conformity with the authorizing order. 18 U.S.C. § 2518(10)(a)(i)-(iii). An "aggrieved person" for Title III purposes is one who is either (1) a party to any intercepted communication, or (2) a person against whom the interception was directed. *Id.* § 2510(11). Although Title III contains this express standing provision, courts have long recognized that Congress's intent was to apply the existing law of Fourth Amendment standing to wiretap cases. *United States v. Scasino,* 513 F.2d 47, 50 (5th Cir.1975) (quoting *Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969)); *see* S.Rep. No. 1097, 90th Cong., 2d Sess. Relying on this Congressional intent, courts continue to construe Title III standing in accordance with standing requirements applied to suppression claims under the Fourth Amendment. *See, e.g., United States v. Gallo,* 863 F.2d 185, 192 (2d Cir.1988) (citing *Alderman,* 394 U.S. at 175–76 & n. 9, 89 S.Ct. at 967–68 n. 9; S.Rep. No. 1097, 90th Cong., 2d Sess). Accordingly, one does not become an "aggrieved person" under Title III solely by the introduction of damaging evidence. *United States v. Garcia,* 1991 WL 120239 (S.D.N.Y. June 21, 1991) (citing *Gallo,* 863 F.2d at 192; *Alderman,* 394 U.S. at 171–72, 89 S.Ct. 961). *But see United States v. Marcello,* 508 F.Supp. 586, 602 n. 6 (E.D.La.1981).

It is undisputed that Martin was intercepted at least once during the course of the Brown T–III while having a social conversation with Brown. Accordingly, Martin argues that he fits squarely within the definition of a Title III "aggrieved person," and therefore, has standing to

challenge the Brown T–III pursuant to the express statutory grant conferred by Section 2518(10).

The Government argues, however, that Title III *implicitly* requires that the intercepted communication be incriminating to the interceptee who seeks to be an "aggrieved person" under the standing provision. It is undisputed that Martin's intercepted phone conversation was in no way incriminating to him and gave the Government no impetus to investigate him with respect to the crimes charged in the current indictment. In support of its position, the Government cites *United States v. Scasino,* 513 F.2d 47 (5th Cir.1975).

In *Scasino,* defendants sought to suppress Title III recordings that were the undisputed fruits of a prior illegal wiretap. The Fifth Circuit, adopting *United States v. Gibson,* 500 F.2d 854 (4th Cir.1974), concluded that defendants had no standing to challenge the prior wiretap in large part because they were not directly implicated by the prior wiretap. *Scasino,* 513 F.2d at 49. In *Gibson,* the Fourth Circuit, under factual circumstances nearly identical to those in *Scasino,* had concluded that "[t]he clear implication of [Section 2518(10)(a) ] is that an 'aggrieved person' should not include one who is not implicated and against whom no one has made of proffer of information derived from the defectively authorized tap." 500 F.2d at 855.

Although *Scasino* and *Gibson* are undoubtedly supportive of the Government's position, they fall short of making the Government's point in this case due to a *key* factual distinction present in this case: Unlike Martin, the defendants in *Scasino* and *Gibson* were never intercepted on the illegal T–III surveillance that they sought to indirectly attack.[7] Thus, those defen-

---

7. At the hearing on Martin's motion, the Government suggested that the facts of *Scasino*

left open the possibility that the defendants in that case were in fact interceptees. However,

dants did not meet one of the express statutory standing provisions like Martin does. Consequently, those cases are of limited usefulness in determining whether an interceptee must be incriminated in order to be an "aggrieved person" under Title III.[8]

In fact, after extensive research, the Court was unable to identify any case that addressed the unique factual scenario presented by this case. Rather, the cases typically address an interceptee whose conversations were unarguably incriminating, see, e.g., United States v. Kelley, 140 F.3d 596 (5th Cir.1998) (standing), or a non-interceptee where the conversations were not incriminating, see, e.g., United States v. Cruz, 594 F.2d 268 (1st Cir.1979) (no standing). None addressed a defendant like Martin who was an interceptee but whose intercepted conversations were not incriminating.

■ Pretermitting the issue of whether the intercepted conversation must be incriminating, the real inquiry would appear to be whether Title III would give Martin standing to suppress the specific Brown T–III conversations which did in fact provide probable cause for the subsequent surveillance that captured the conversations under attack in this motion. After all, the conversations Martin is trying to exclude in the instant motion are fruits of conversations to which Martin was not a party—they are not fruits of Martin's intercepted phone call. Other courts have recognized

that an interceptee might very well have standing with respect to conversations in which he participates but lack standing as to other conversations, captured on the same wiretap, as to which he was not a party. See, e.g., United States v. Plescia, 773 F.Supp. 1068, 1077 (N.D.Ill.1991); see also United States v. Holmes, 521 F.2d 859 (1975), vacated in part, 537 F.2d 227 (5th Cir.1976) (en banc).

■ Martin's argument, however, presupposes that Title III would treat every Brown T–III conversation equally for standing purposes such that one serendipitous phone call intercepted during months of surveillance would give him standing to challenge the fruits of hundreds of hours of communications in which he had no privacy interest whatsoever. This broad interpretation is contrary to Fourth Amendment standing law which has been held to govern motions to suppress under Title III. Standing under the Fourth Amendment is narrowly construed to include only those whose privacy rights are actually violated. Alderman, 394 U.S. at 171–72, 89 S.Ct. at 965. Because Martin was not an interceptee in the Brown T–III conversations that provided probable cause for the subsequent surveillance and had no privacy interest in those conversations, he would have no standing to suppress them directly. Consequently, he cannot rely on their alleged illegality to suppress their fruits, i.e., the nine conversations under attack in the instant motion.[9]

---

a careful review of that case reveals that was not so. See Scasino, 513 F.2d at 50 ("None of the defendants involved in this appeal were participants in any conversations intercepted by the [first] wiretap...").

8. Also militating against blind reliance on Scasino is that in United States v. Kelley, 140 F.3d 596, 604 n. 7 (5th Cir.1998), the Fifth Circuit briefly recapitulated the Title III standing requirements it had enunciated in Scasino. No mention was made of any re-

quirement that defendant be incriminated by the evidence under attack.

9. The standing provision gives aggrieved persons standing to suppress "the contents of any wire or oral communication intercepted...." 18 U.S.C. § 2518(10)(a) (emphasis added). "Contents" is defined simply to include any information concerning the substance, purport, or meaning of that communication. Id. § 2510(8).

This conclusion is bolstered by the reasoning employed by the Fifth Circuit in *Holmes, supra.* In that case, the Fifth Circuit was faced with deciding which defendants had standing to challenge evidence obtained by the government's use of an unauthorized electronic homing beacon designed to track the movement of one defendant's van. The court held that the electronic beacon, like a telephone wiretap, constituted a continuous search. *Holmes,* 521 F.2d at 864.[10] Although all of the defendants sought to suppress all of the evidence obtained from the unauthorized beacon, the court concluded that an individual's standing to challenge the fruits of the beacon was limited to the specific evidence obtained as a direct result of the independent violation of each defendant's Fourth Amendment rights. *Id.* at 868. The court rejected the notion that all evidence obtained as a result of the beacon had to be suppressed for those defendants whose rights were only violated when the van was present on their property. *Id.* Of profound significance to the instant case, is that the Fifth Circuit analogized the fleeting nature of standing with respect to the roving beacon with that of a caller who calls a wiretapped phone line, hangs up, but gets implicated in a later conversation to which he not a party. *Id.* at 868 n. 16 (citing *Alderman, supra*). The clear implication of the Fifth Circuit's analogy in *Holmes* is that Martin's standing in the instant case does not attach to the entire Brown T–III *in globo* but rather to the specific conversations in which his Fourth Amendment rights were violated. Noth-

ing in the text or legislative history of Title III suggests a contrary result.

For the reasons stated above, the Court concludes that Martin likely lacks standing to challenge the Brown T–III, and therefore, any alleged illegality with respect to the Brown T–III is irrelevant to this case. Nevertheless, out of an abundance of caution, the Court has considered the merits of Martin's motion without regard to standing. Because the Court concludes that the Brown T–III was in fact valid, the issue of Martin's standing is moot.

### ii. Validity of the T–III Surveillance

■ Judge Polozola, in the Middle District of Louisiana, was the first judge to rule on the validity of the T–III surveillance which captured the conversations Martin is seeking to suppress in this case. *See United States v. Edwin Edwards, et al.* (M.D.La.CR98–165B–M2). As discussed earlier in this ruling, Martin joined in the motion to suppress that prompted Judge Polozola's ruling. On August 22, 2000, following trial, Judge Polozola issued detailed and lengthy reasons for denying the motion. Those reasons are reported at *United States v. Edwards,* 124 F.Supp.2d 387 (M.D.La. Aug.22, 2000).

■ In the *Edwards* case, Judge Polozola considered each of the arguments that Martin is now raising in the instant motion. He concluded that all of the initial affidavits were supported by probable cause, *id.* at 393, as were all of the extensions to the initial surveillance orders. He also concluded that in light of the totality of the circumstances, the district judges

10. The part of the *Holmes* panel opinion that held that the use of the electronic beacon was a search subject to the Fourth Amendment was vacated by the court sitting en banc. 537 F.2d at 227–28. The panel's discussion on the issue of standing, however, was adopted by the Fifth Circuit en banc. *Id.* at 228 & n.

2. Notwithstanding the fact that use of the *Holmes* electronic beacon would no longer implicate the Fourth Amendment, the standing reasoning employed in the case is still useful given that the wiretaps at issue in this case unarguably implicate the Fourth Amendment.

acted reasonably, and not arbitrarily, in granting the initial Title III orders and their extensions. *Id.* at 401. In sum, he determined that none of the surveillance was authorized or conducted in violation of Title III or the Fourth Amendment. As for the *Franks* issue, Judge Polozola determined that Martin had failed to make the requisite substantial preliminary showing for an evidentiary hearing, and that even if there were errors or omissions in the affidavits, they did not negate probable cause. *Id.* at 395.

In consideration of the motion to suppress that Martin filed in the instant case, this Court has conducted a complete and independent review of all of the evidence submitted by both sides in conjunction with the motion, including the evidence to which the Court has already concluded that Martin likely lacks standing. After reviewing all of the evidence and arguments presented by both sides, the Court concludes that Martin's motion to suppress and motion for a *Franks* hearing should be denied. The Court reaches this conclusion for essentially the same reasons stated by Judge Polozola in the *Edwards* case. The Court agrees with Judge Polozola's conclusions and reasons, and therefore, adopts them as its own. Accordingly, for the reasons stated by Judge Polozola in the *Edwards* case, 124 F.Supp.2d 387 (M.D.La. Aug.22, 2000), Martin's motion to suppress and motion for a *Franks* hearing are DENIED.

## II. Martin's Motions to Dismiss for *Kastigar* Violations and Prosecutorial Misconduct

The two remaining motions center on Martin's appearance before a state grand jury in late 1993 or early 1994. The factual background relevant to these motions was recited in detail by Judge Polozola in *United States v. Edwards,* 79 F.Supp.2d 645, 647–48 (M.D.La. Nov.30, 1999), and therefore, will not be repeated here. Like the motion to suppress, Martin filed a similar *Kastigar* motion in the *Edwards* case.

■ In the *Kastigar* motion, Martin asserts that the current indictment charges him with conduct that was the subject of immunized testimony he gave before a state grand jury. He argues that immunity was conferred by article 433(A)(2) of the Louisiana Code of Criminal Procedure because he "became a target" of the grand jury yet was not afforded counsel. He cites his subsequent federal indictments as proof of his target status.

In the *Edwards* case, Martin raised the same *Kastigar* arguments before Judge Polozola. Judge Polozola concluded that Martin had not been given immunity under state law, and that the sanctions inherent in article 433(A)(2) were not binding on a federal court. *United States v. Edwards,* 83 F.Supp.2d 723, 726–27 (M.D.La. Dec.28, 1999). This Court has independently considered Martin's contentions and the evidence offered in support of his motion, and concludes that the *Kastigar* motion should be denied for the same reasons recited by Judge Polozola in conjunction with the *Edwards* case.[11] *Id.*

■ Likewise, the Court concludes that the Motion to Dismiss for Prosecutorial Misconduct is without merit. The crux of this motion is that the Court should sanction the Government for alleged misconduct on the part of state employees which

---

**11.** The transcript of Martin's state grand jury testimony was admitted under seal as an exhibit in support of his *Kastigar* motion at the February 15, 2001 hearing. The Court notes that the district attorney expressly told Martin that he was *not* receiving any immunity for his testimony.

Martin attempts to impute to federal prosecutors. Again this Court concurs with Judge Polozola's finding that the failure of state and federal prosecutors to follow the correct procedure for transmitting state grand jury material to the federal authorities was not *per se* misconduct. *Edwards*, 79 F.Supp.2d at 651–52. And even if there was misconduct on the part of state officials, there is no evidence that federal prosecutors participated. Accordingly;

**IT IS ORDERED** that the Amended Motion to Suppress Fruits of Wire, Oral and Electronic Surveillance (Rec.Doc. 87) filed by defendant Andrew Martin should be and is hereby **DENIED;**

**IT IS FURTHER ORDERED** that Martin's request for a *Franks* hearing should be and is hereby **DENIED;**

**IT IS FURTHER ORDERED** that the Motion to Dismiss for *Kastigar* Violations (Rec.Doc. 44) filed by defendant Andrew Martin should be and is hereby **DENIED;**

**IT IS FURTHER ORDERED** that the Motion to Dismiss for Prosecutorial Misconduct (Rec.Doc. 45) filed by defendant Andrew Martin should be and is hereby **DENIED.**