United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 30, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————————————

No. 02-30177

———————————————————

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

                    versus

ANDREW A. MARTIN,

                              Defendant-Appellant.


———————————————————

Appeal from the United States District Court
For the Eastern District of Louisiana

———————————————————


Before HIGGINBOTHAM, EMILIO M. GARZA, and DENNIS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

    Appellant Andrew A. Martin was convicted of unlawfully conspiring to defraud the United States by impairing the ability of the IRS to ascertain and collect income taxes in violation of 18 U.S.C. § 371, as well as several counts of false statements and tax evasion offenses in violation of 26 U.S.C. §§ 7201 and 7206(1). Martin raises three issues on appeal: the failure of the district court to hold evidentiary hearings on his motions for a *Kastigar* and a *Franks* hearing, and the jury instruction with regard to the violation of 18 U.S.C. § 371. We affirm the convictions.

I.

Martin was a businessman who owned several businesses in the offshore oil servicing industry. Gregory Duvieilh, an accountant, was a business associate. Duvieilh started several businesses, including Iron Man Fisheries, Inc., which he incorporated in February 1991 with Martin for the purpose of importing lobsters. Duvieilh owned all of the stock in the company and held sole signature authority on its corporate checking account at the Community Bank of Lafourche in Raceland, Louisiana. Iron Man, however, never did any business and existed only on paper.

In 1990, the IRS assessed the sum of $188,450 as being the "trust fund" portion of the taxes withheld from the wages of employees of Martin's businesses. Martin was personally liable to the IRS for this amount. In an attempt to help Martin frustrate the IRS's efforts to collect the taxes, Duvieilh arranged for Martin to use the Iron Man bank account under the cover of Duvieilh's name. Duvieilh gave Martin signed blank checks to use at Martin's discretion and also signed sales and mortgage documents for Martin's benefit. Duvieilh never filed any corporate income tax returns for Iron Man.

Martin diverted over $500,000 in income into the Iron Man account from various sources. Martin purchased property and assets under the Iron Man name for his personal use, including a houseboat, fishing boats, and personal residences in Baton Rouge and Kenner.

2

In June 1995, Martin, assisted by Duvieilh, filed an IRS Form 656, Offer and Compromise, stating that he could borrow $20,000 to pay the IRS if it would forgive the remaining liability owed to the IRS. Martin falsely stated therein that he had no income other than his state government salary, received as Executive Assistant to then-Governor Edwin Edwards, and had no assets other than an over-mortgaged house in Galiano, Louisiana. Martin did not list any of his assets sheltered under Iron Man.

Although the $188,000 which the IRS had initially assessed Martin in connection with the withheld wages came from Martin's business operations, Martin also sought to avoid paying taxes on income which he received for the tax years 1994 through 1997. Much of Martin's income during 1996 and 1997 came from cash kickbacks paid by Robert Guidry for Martin's assistance, along with that of Governor Edwards and his son Steven, in securing a hearing before the state police which eventually led to Guidry's obtaining a gambling license for the Treasure Chest Casino.[1] Martin failed to file income tax returns on taxable income amounting to $150,400 in 1994, $138,000 in 1995, and $239,000 in 1997. Martin did file an income tax return in 1996 in which he falsely reported his income to be $76,000 when in fact it amounted to approxiamtely $477,000. Martin failed to pay taxes amounting to $437,671.

---

[1] *See United States v. Edwards*, 303 F.3d 606 (5th Cir. 2002), for details of these events and the resulting criminal convictions.

As part of its investigation of Martin's taxes, the government received a copy of the transcript of Martin's testimony before a Louisiana grand jury. Martin testified before the state grand jury investigating Governor Edwards as a subpoenaed non-target witness. During his testimony before the grand jury, Martin testified about high-stakes poker games at the Governor's mansion, and identified some of the players. Several of these named players testified at Martin's tax trial concerning Martin's unreported poker winnings.

The government also obtained wiretap authorizations for the telephones of Cecil Brown during its investigation of Governor Edwards. These taps yielded evidence which the government used to obtain additional wiretaps, which in turn yielded evidence which the government proffered at Martin's tax trial.

Martin filed three major pre-trial motions, two of which are at issue on appeal. The first was a motion to dismiss the indictment under *Kastigar* due to the government's use of Martin's allegedly immunized state grand jury testimony.[2] The second was a motion to suppress all evidence obtained through wire and electronic surveillance during the government's investigation of Governor Edwards, accompanied by a six volume offer of proof and a

---

[2] *See Kastigar v. United States*, 406 U.S. 441 (1972) (holding that in a subsequent criminal prosecution of a person who has been compelled to testify under grant of immunity, prosecution has the burden of proving affirmatively that evidence proposed to be used is derived from a legitimate independent source).

motion for a *Franks* hearing.[3]  The district court heard oral argument on the motions and denied them without an evidentiary hearing.

The charges against Martin were tried to a jury which returned a guilty verdict on all counts.  Martin moved for a new trial or judgment of acquittal, arguing, *inter alia*, that the government's evidence at trial highlighted the need for a *Kastigar* hearing.  The district court denied his motion.  Martin timely appealed.

## II.

Martin argues that his testimony as a non-target witness before the Louisiana grand jury was immunized under Louisiana Code of Criminal Procedure Article 433.A(2).[4]  Pursuant to *Kastigar v. United States*,[5] Martin asserts that the district court should have required the government to show an independent source for its evidence of unreported poker winnings.

Whether Martin had automatic immunity under the Louisiana statute as a non-target witnesses testifying before a state grand

---

[3] *See Franks v. Delaware*, 438 U.S. 154 (1978) (holding that where a defendant makes substantial preliminary showing that a false statement was knowingly included in search warrant affidavit, and if allegedly false statement is necessary to finding of probable cause, Fourth Amendment requires that hearing be held).

[4] La. Code Crim. Proc. Ann. art. 433 (West 2003).

[5] 406 U.S. 441 (1972).

jury is a question of law we review *de novo*.[6]  Factual findings relating to the *Kastigar* inquiry are reviewed for clear error.[7]

This issue turns on the interpretation of Article 433, which is titled "Persons present during grand jury sessions." Subparagraph A(2) reads in full:

> An attorney for a target of the grand jury's investigation may be present during the testimony of said target.  The attorney shall be prohibited from objecting, addressing or arguing before the grand jury;  however he may consult with his client at anytime.  The court shall remove such attorney for violation of these conditions. If a witness becomes a target because of his testimony, the legal advisor to the grand jury shall inform him of his right to counsel and cease questioning until such witness has obtained counsel or voluntarily and intelligently waived his right to counsel. Any evidence or testimony obtained under the provisions of this Subparagraph from a witness who later becomes a target shall not be admissible in a proceeding against him.[8]

It is the last sentence that Martin contends grants him automatic use and derivative use immunity for his testimony as a non-target witness before the grand jury.  Under *Murphy v. Waterfront Commission* and *Kastigar* federal prosecutors are prohibited from using immunized state testimony in a federal criminal prosecution.[9]

---

[6] *See United States v. Cantu*, 185 F.3d 298, 302 (5th Cir. 1999).

[7] *See United States v. Jimenez*, 256 F.3d 330, 348 (5th Cir. 2001).

[8] La. Code Crim. Proc. Ann. art. 433 (West 2003).

[9] *See Murphy v. Waterfront Comm'n*, 378 U.S. 52, 79 (1964); *Kastigar*, 406 U.S. at 456-57; *United States v. Daniels*, 281 F.3d 168, 180 (5th Cir.), *cert. denied*, 122 S.Ct. 2313 (2002).

At the outset, it should be noted that Martin is not arguing that he was granted immunity by the district attorney in order to compel his testimony over an assertion of his Fifth Amendment rights. Martin did not assert his Fifth Amendment rights and the district attorney explicitly notified Martin that he was not being granted any immunity at the start of his grand jury testimony. However, immediately following this notice, Martin made certain that he was not a target of the grand jury. Martin argues that as a non-target witness he did not need to assert his Fifth Amendment rights or be granted immunity by the district attorney, since Article 433.A(2) automatically immunized his testimony. He also asserts that his testimony was compelled because the district attorney told him that he had to answer the questions and his appearance was pursuant to a subpoena. The government responds that Martin has acknowledged that he was not granted immunity, that Article 433.A(2) does not automatically confer immunity, and therefore *Kastigar* does not apply. We agree.

The district court in this case explicitly relied on the reasoning of the District Court for the Middle District of Louisiana in a related case, *United States v. Edwards*, in which Martin raised exactly the same argument.[10] Although we reach the

---

[10] *See United States v. Martin*, 169 F. Supp. 2d 558, 567-68 (E.D. La. 2001) (relying on the reasoning in *United States v. Edwards*, 83 F. Supp. 2d 723, 726-27 (M.D. La. 1999)).

7

same conclusion as that court, we do not entirely agree with its reasoning.[11]

Relying on two Louisiana cases, that court concluded that only one Louisiana statute confers statutory immunity, namely Louisiana Code Criminal Procedure Article 439.1.[12] The court relied on a statement from a Louisiana Court of Appeals that "the only Louisiana statute specifically granting any type of immunity (use immunity) is Code of Criminal Procedure Article 439.1, which requires the agreement of the district attorney or the attorney general."[13] Reliance on this quotation is misplaced. Read in context, it is only a restatement of the state's argument in the case, not a statement of Louisiana law by the court. The government also erroneously relies on this language in its argument here.

The district court in *Edwards* also relied on *State v. Tanner*, in which the Louisiana Supreme Court ruled that a target of a grand

---

[11] The Middle District Court's ruling on this issue was not appealed, and therefore was not reviewed by this court in *United States v. Edwards*, 303 F.3d 606 (5th Cir. 2002).

[12] La. Code Crim. P. Ann. art. 439.1 (West 2003) reads in part:

In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a grand jury of the state, ... the judicial district court ... shall issue ... upon the request of the attorney general together with the district attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination....

[13] *Edwards*, 83 F. Supp. 2d 726 (quoting *State v. Cinel*, 619 So. 2d 770, 775 (La. Ct. App. 1993)).

jury investigation who waived his right to remain silent could not use grand jury secrecy laws, including Article 433, to prevent the use of his grand jury testimony at trial.[14] The *Edwards* court concluded that the state court's pronouncement that the defendant did not receive *any* immunity was dispositive of Martin's argument. However, Article 433 clearly distinguishes between target and non-target witnesses, and thus the *Tanner* decision does not control, since unlike Tanner, Martin was not a target witness.

In addition to these cases, the government also cites *State v. Poland*, contending that the Louisiana Supreme Court has made it clear that Article 433 only relates to who may be present during grand jury proceedings, not immunity.[15] However, as in *Tanner*, *Poland* concerned a witness who was a target of the grand jury and the court had no reason to apply Article 433.A(2).[16] Thus we are faced with an ambiguous statute and no relevant state case law to guide us in its interpretation.

We begin by examining the language of the statute. On its face, the statute only applies to evidence or testimony "obtained under the provisions of this Subparagraph" from a non-target witness "who later becomes a target."[17] The parties dispute what

---

[14] *See id.* (quoting *State v. Tanner*, 425 So. 2d 760, 763 (La. 1983)).

[15] 2000-0453 (La. 3/16/01), 782 So.2d 556 (La. 2001).

[16] *Id.* at 557.

[17] Art. 433.A(2).

9

it means to "later become a target."  Martin argues for a broad interpretation, such that a witness who becomes a target of a criminal investigation at any later time cannot have his testimony as a non-target witness used against him.  The government responds by arguing that "later becomes a target" applies only to those witnesses who become a target of the grand jury before which they are testifying.  The government has the better interpretation of the statute.

The interpretation of "later becomes a target" is clarified by the limitation on what evidence and testimony may not be used pursuant to Article 433.A(2).  Only testimony and evidence "obtained under the provisions of this Subparagraph" are covered by the provision.  The provisions Subparagraph A(2) concern only two types of witnesses: target witnesses and non-target witnesses who become a target because of their testimony while testifying.  The provisions of the Subparagraph do not relate to non-target witnesses who become the target of a criminal investigation only after they have testified.  Therefore, the only type of witness that testifies under the provisions of the Subparagraph and later becomes a target is one that becomes a target while testifying.  Thus, Article 433.A(2) only applies to the evidence or testimony from a non-target witness who becomes a target because of his testimony while testifying before the state grand jury.  This

10

interpretation of the statute was also adopted by the district court.[18]

Martin argues that this interpretation of the statute is not supported by the legislative history of the bill which added subparagraph A(2) to Article 433. First, Martin notes that the Senate adopted an amendment to the bill which read in relevant part, "Any evidence or testimony obtained in violation of this provision shall be inadmissible at trial on any criminal charges arising out of said grand jury investigation."[19] This amendment was deleted and replaced with the current language, "Any evidence or testimony obtained under the provisions of this Subparagraph from a witness who later becomes a target shall not be admissible in a proceeding against him."[20] Martin argues that the language "arising out of said grand jury investigation" is the same as the interpretation we adopt, and was ultimately rejected by the legislature in favor of protection for non-target witnesses who become a target at any later time.

Second, Martin notes that the House version of the bill which was sent to the Senate granted the right to have counsel present in

---

[18] *See Edwards*, 83 F. Supp. 2d at 726 (stating, "Article 433(A)(2) is intended to protect the rights of a witness who, because of his testimony, **becomes a target of the state grand jury before which he is testifying**") (emphasis in original).

[19] Amendment to H.R. 901, Official Daily Journal of the Louisiana State Senate, page 34, June 26, 1986.

[20] *Id.* at 35.

the grand jury to all witnesses, not just a target.[21] Martin argues that the final bill was a trade-off, limiting the right to have an attorney present to target witnesses in exchange for immunizing non-target witnesses' testimony. Martin therefore concludes that the legislature provided automatic use and derivative use immunity for all non-target witnesses.

Martin's reading of the legislative history is not unreasonable, but the language of the statute as adopted simply does not support a broad grant of use and derivative use immunity.[22] As discussed above, the language of the statute indicates that only those non-target witnesses who become targets while testifying are covered by Article 433.A(2). This interpretation is not inconsistent with the legislative history. The version of the bill accepted and then rejected by the Senate provided very narrow protection since it required a violation of the provisions of the subparagraph and only prohibited the use of the testimony in criminal trials arising out of the grand jury where the violation occurred. The final version of the statute is broader, requiring

---

[21] *See* H.R. 901, Official Journal of the Louisiana House of Representatives, page 11-12, 34-35, May 23, 1986.

[22] An example of a grant of statutory use immunity is found in 15 La. Rev. Stat. Ann. § 468 (West 2003):

> Any person may be compelled to testify in any lawful proceeding against another charged with commercial bribery, public bribery, bribery of voters or corrupt influencing, and shall not be permitted to withhold his testimony upon the ground that it may incriminate him or expose him to public infamy; but such testimony shall not afterwards be used against him in any judicial proceeding, except for perjury in giving such testimony.

only that the witness become a target while testifying and preventing the use of the witness's testimony in any proceeding against the witness. Our interpretation of the statute is not inconsistent with the legislative history because it is not the same as the one rejected by the Senate.

We now turn to the application of the statute to Martin. Article 433.A(2) does not apply to Martin's testimony because, as the district court noted, there is "no evidence to show that Mr. Martin became a target of the East Baton Rouge Parish grand jury before which he was called to testify."[23] Because Martin failed to satisfy his initial burden of demonstrating that he testified under a state grant of immunity,[24] *Kastigar* does not apply and the district court did not err in refusing to conduct a *Kastigar* hearing.

### III.

Martin next argues that the affidavit that supported the authorization of a wiretap of Cecil Brown's home and office telephone recklessly or deliberately misrepresented the truth and that without these uncorroborated accusations the remaining parts of the affidavit do not support probable cause. Because the wiretap of Cecil Brown's home and office led to evidence used to

---

[23] *Edwards*, 83 F. Supp. 2d at 726-27.

[24] *United States v. Daniels*, 281 F.3d 168, 180 (5th Cir.), *cert. denied*, 122 S.Ct. 2313 (2002) (stating that the defendant must show that he made immunized statements regarding matters related to the federal prosecution).

13

obtain the wiretaps that yielded the evidence used at trial against Martin, Martin argues that the evidence against him must be excluded.[25]  We review the denial of a *Franks* hearing *de novo*.[26]

The legality of the Cecil Brown wiretaps have been considered and upheld three times by this court.[27]  Martin was an appellant in one of these appeals and was denied a rehearing by this court as well as *certiorari* by the Supreme Court.[28]  Here Martin raises the same issues once again and asks this court to reach a different conclusion when it reviews the issue for the fourth time.

Martin devotes a significant portion of his brief to establishing that he made the requisite "substantial preliminary showing" that a false statement was deliberately or recklessly included in the affidavit that supported the application for the wire tap of Cecil Brown's telephones.  However, if the remaining portions of the affidavit support probable cause, Martin was not entitled to a *Franks* hearing.[29]

---

[25] *See Franks v. Delaware*, 438 U. S. 154 (1978).

[26] *See United States v. Dickey*, 102 F.3d 157, 162 (5th Cir. 1996).

[27] *See United States v. Edwards*, 303 F.3d 606, 617, 622 n.8 (5th Cir. 2002); *United States v. James Brown*, 303 F.3d 582, 603 (5th Cir. 2002); *United States v. Cecil Brown*, 298 F.3d 392, 396-404 (5th Cir. 2002).

[28] *See Edwards*, 303 F.3d, *cert. denied*, 123 S. Ct. 1369 (2003).

[29] *See Brown*, 298 F.3d at 395-96 (stating that defendant is not entitled to a hearing if after striking the disputed material there remains "sufficient content in the warrant affidavit to support a finding of probable cause" (quotations and citations omitted)).

14

Martin's assertions that the activities in the affidavit are legal when considered without the stricken portions are without merit. The remaining portions of the affidavit do not need to prove beyond a reasonable doubt that a crime was being committed, only that considering the "totality of the circumstances", the judge issuing the warrant could reasonably conclude that the warrant was justified.[30] In accordance with *Edwards*, *Cecil Brown* and *James Brown,* we hold that there was probable cause to sustain the issuance of the warrants.

IV.

Martin's final argument is that the district court erred in not including "deceit and dishonest means" in its jury instruction on appellant's 18 U.S.C. § 371 charge. Conspiracies charged under 18 U.S.C. § 371 can have either of two objectives: to violate federal law, or to defraud the United States. Martin argues that conspiracies to defraud require the objective of the conspiracy to be interference with a government function "by deceit, craft or trickery, or at least by means that are dishonest."[31] Martin argues that the jury instruction erred in two respects. First, it was an instruction on an "offense clause" conspiracy, not a "defraud clause" conspiracy as the indictment charged, and thus was a

---

[30] *See United States v. Dickey*, 102 F.3d 157, 162 (5th Cir. 1996) (stating that totality of the circumstances test applies, and that magistrate judge only needed sufficient reliable information to make a reasonable conclusion).

[31] *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924).

constructive amendment of the indictment. Second, the instruction failed to include any language on deceit or dishonest means. Because many activities that citizens undertake with the goal of making the government's job more difficult are protected by the First Amendment, failure to include the deceit or dishonest means instruction made the charge overbroad. In light of this alleged overbroadness, Martin argues the court should find clear error.

Martin made no objection to the district court concerning the jury instruction, nor did he submit a proposed instruction that covered his First Amendment defense. Therefore, we review the district court's instruction for plain error.[32] "Plain error occurs only when the instruction, considered as a whole, was so clearly erroneous as to result in the likelihood of a grave miscarriage of justice."[33]

Martin's first argument is without merit in light of the entire jury instruction. The jury instruction states that the first element of the offense is that the defendant and at least one other person conspired to "commit the crime of defrauding the United States." This is clearly a "defraud clause" instruction.

As to the second argument, a charge under the "defraud clause" does not require a "deceit and dishonest means" instruction. In *United States v. Saks*, we upheld a jury instruction which consisted

---

[32] *See United States v. Lankford*, 196 F.3d 563, 575 (5th Cir. 1999).

[33] *Id.* (quotations and citations omitted).

16

of the statutory language of § 371, which does not contain "deceit and dishonest means" language.[34] In reviewing the jury instruction, we stated that "because defendants' claim of prejudice is based solely on the failure to give adequate explanation of the offense--beyond the reading of the statutory language itself--their burden is especially heavy."[35] Although the jury instruction affirmed in *Saks* did not include the "deceit and dishonest means" language, the district court did read the indictment which included that language.[36]

Here, the district court included language from the indictment in its instruction, stating that the defendant was charged with "conspiring to frustrate the collection by the [IRS] of trust fund liability taxes due and owing by the Defendant and to disguise and conceal this scheme from the [IRS]." Although not read by the court, the indictment, a copy of which the jury had during deliberations, charged that "[a]mong the objects and purposes of the conspiracy were through the use of deceit, craft, trickery, and dishonest means" to frustrate the collection of taxes due and to disguise and conceal the scheme.

Given that the indictment included the "deceit and dishonest means" language, and that the evidence at trial clearly

---

[34] *See United States v. Saks*, 964 F.2d 1514, 1522 (5th Cir. 1992).

[35] *Id.*

[36] *Id.*

17

demonstrated a scheme that at a minimum involved "trickery", the jury instruction cannot be viewed as "so clearly erroneous as to result in the likelihood of a grave miscarriage of justice."[37] Therefore the jury instruction was not plain error.

## V.

For the foregoing reasons, the defendant's convictions are hereby AFFIRMED.

---

[37] *Lankford*, 196 F.3d at 575 (quotations and citations omitted).

DENNIS, Circuit Judge, concurring in part and dissenting in part:

While I join the majority in affirming the district court on the *Franks* hearing and jury instruction issues, I respectfully dissent as to the denial of a *Kastigar* hearing. Because I believe the Louisiana legislature intended for article 433(A)(2) of the Louisiana Code of Criminal Procedure to provide immunity to all non-target witnesses, I would require the district court to hold a *Kastigar* hearing to determine if there was an independent source for the information supplied by Martin's state grand jury testimony.

As the majority acknowledges, article 433(A)(2) is ambiguous. Therefore, we may look beyond the language of the statute to determine the legislature's intent in passing this provision. *In re Greenway*, 71 F.3d 1177, 1180 (5th Cir. 1996) ("Only if the term is ambiguous will we proceed beyond the language as written."); *U.S. v. Evinger*, 919 F.2d 381, 383 (5th Cir. 1990). The language of the statute could, standing alone, support a broad application of immunity. But when one considers the public policy in favor of encouraging grand jury testimony and the statute's legislative history, it is even more evident that the legislature intended that the provision would immunize all non-target witness testimony. This interpretation is further supported by the fact that the

majority's approach will distinctly disadvantage non-target witnesses and will have a chilling effect on grand jury testimony.

For these reasons, I disagree with the majority's contention that the provision covers only target witnesses instead of all grand jury witnesses, both target and non-target. It is true that article 433(A)(2) allows only target witnesses and non-target witnesses who later become targets to have counsel present in the grand jury. But the provision also provides that non-target witnesses may *not* have an attorney present unless they become a target. Article 433 concerns "Persons present during grand jury session" and provides that only persons expressly named are allowed in grand jury proceedings. LA. CODE CRIM. PROC. 433(A)(1). By only allowing counsel for target witnesses, the provision necessarily excludes counsel for non-target witnesses. Accordingly, when the last sentence of the article 433(A)(2) provides for immunity to "testimony obtained under the provisions of this Subparagraph," it immunizes non-target witnesses, including those who later become targets at subsequent proceedings.

The statute does not limit itself to situations in which a "witness becomes a target because of his testimony *while testifying*." Instead, it discusses when a "witness becomes a target because of his testimony," and "a witness who later becomes a target." Both phrases are expansive, indicating an intention to

cover non-target witnesses who later become targets in a proceeding other than the immediate grand jury session.

This interpretation is consistent with the public policy of promoting grand jury testimony, which has been expressed by both the legislature and the Louisiana Supreme Court. Promoting testimony is one of the prime justifications for the secrecy of grand jury proceedings. LA. CODE CRIM. PROC. 433 cmt. ("Some of the more important reasons for the secrecy of grand jury meetings ... are: ... to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes."); *In re Grand Jury*, 737 So.2d 1, 6 (La. 1999) (quoting *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218-19 (1979) ("[W]e have noted several distinct interests served by safeguarding the confidentiality of grand jury proceedings.... [I]f preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward."). The concerns about grand jury testimony are primarily focused on non-target witnesses. *See State v. Poland*, 782 So. 2d 556, 560 (La. 2001) (holding that the "considerations for the legislative mandate of [grand jury] secrecy clearly are designed primarily for a non-target witness and are not significant when a target of the investigation voluntarily testifies before the grand jury with counsel present."). Immunity for non-target witnesses, as much as grand jury secrecy, furthers the goal of encouraging these witnesses to testify.

Further, the legislative history confirms that article 433(A)(2) provides immunity for all non-target witnesses. Before the legislature enacted this provision, it changed the last sentence from "Any evidence or testimony obtained in violation of this provision shall be inadmissible at trial on any criminal charges arising out of said grand jury investigation" to "Any evidence or testimony obtained under the provisions of this Subparagraph from a witness who later becomes a target shall not be admissible in a proceeding against him." *Amendment to H.R. 901, Official Daily Journal of the La. State Senate*, p. 34, June 26, 1986.

The legislature, by changing "arising out of said grand jury investigation" to "in a proceeding against him," broadened the language to include immunity for proceedings besides the immediate grand jury meeting. This explanation, which the majority concedes is "not unreasonable," is consistent with and supports an interpretation of the statute that immunizes all non-target witnesses.

The majority contends that this change is consistent with its interpretation because it only means that now no violation is needed before immunity attaches. Although it is true that no violation is needed before immunity attaches, the majority does not explain how its narrow approach is consistent with the

legislature's expansion of the proceedings in which a non-target witness has immunity.

The other procedural change made before enactment further supports the application of immunity to all non-target witnesses. As originally drafted, the statute granted all witnesses the right to have counsel present at the grand jury proceeding while they were providing testimony. *Amendment to H.R. 901, Official Journal of the La. House of Representatives*, pp. 11-12, 34-35, May 23, 1986. But before enactment, the statute was changed to limit the right to counsel to target witnesses only. The only reasonable explanation for this change is that the legislature believed that non-target witnesses did not need counsel present because blanket immunity prevented a non-target witness from being harmed by his own testimony. Thus, the legislative history doubly supports the conclusion that the legislature intended to immunize the testimony of all non-target witnesses.

This interpretation is confirmed when one considers the problems the majority's approach will present. Under the majority's interpretation, non-target witnesses will be at a severe disadvantage and receive far less protection than target witnesses. Although non-target witnesses subpoenaed to testify at grand jury proceedings can still invoke their Fifth Amendment privilege against self-incrimination, they, unlike target witnesses, will not have counsel present to advise them of when to invoke this right.

Additionally, if they do not invoke these protections, their testimony can be used against them at any subsequent proceeding, even if they are not aware that they are being targeted. Finally, prosecutors will be able to use the grand jury process to interrogate witnesses without the presence of counsel and then use that testimony against the witness in any subsequent proceeding. This power is extensive because a prosecutor can always convene a new grand jury or initiate criminal proceedings with a bill of information, thus bypassing the extremely limited immunity under the majority's cramped interpretation of the statute. These consequences will cause non-target witnesses to be exceedingly reluctant to testify for fear of future prosecution and will make it difficult to encourage open and honest grand jury proceedings, which is a primary basis for the process. There is no indication that the legislature ever contemplated that this would be the result of passing the statute.

For the foregoing reasons, I believe the legislature intended for article 433(A)(2) to provide immunity to all non-target witnesses, including those who later become targets in any subsequent proceeding. Because Martin falls within this category, I would reverse the district court's denial of a *Kastigar* hearing and remand so that this hearing can take place.